IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Tamar D. Harvey,** )<br>    **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**Sergeant Hobbs, et al.,** )<br>    **Defendants.** ) | 1:20cv605 (TSE/TCB) |

## MEMORANDUM OPINION

Tamar D. Harvey ("Plaintiff"), a Virginia inmate proceeding pro se, filed a civil-rights suit under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was previously detained at the Virginia Department of Corrections' ("VDOC") Greensville Correctional Center ("GRCC").[1] After being granted leave to file an amended complaint, Plaintiff filed an amended complaint against 19 VDOC employees and medical personnel providing care at the GRCC. [Dkt. No. 10]. The matter is before the Court on a motion to dismiss filed by two of the defendants, Riva S. Bonner, L.P.N. ("Nurse Bonner"), and Cyndy W. Thigpen, R.N. ("Nurse Thigpen"), seeking to dismiss Claims 11 and 15 of the amended complaint which alleges that each of these defendants was deliberately indifferent to Plaintiff's serious medical needs. [Dkt. No. 18, 19]. Plaintiff has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Plaintiff has done so. [Dkt. No. 30]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, each defendant's Motion to Dismiss must be granted, and the claims against each of these defendants must be dismissed.

---

[1] Plaintiff is presently detained at the Coffeewood Correctional Center.

## I. Amended Complaint, Claims 11 and 15

*A. Claim 11, Nurse Bonner*

Claim 11 alleges that on May 21, 2019, Nurse Bonner rejected an emergency grievance in which Plaintiff complained that he had not been given his chronic care medications from May 18, 2019 through 21, 2019 and alleged that Plaintiff had suffered "severe chest pains, migraines, and excessively painful withdrawals." [Dkt. No. 10 at 21]. Plaintiff had been prescribed medications to treat hypertension and HIV. [Id.]. Plaintiff submitted an Emergency Grievance ("EG"), EG No. 191163, on May 21, 2019 at 7:55 a.m., which stated that on May 17, 2019, Lt. Ralph Coleman and Unit Manager T. Green moved Plaintiff from one housing unit to another (HU-6 to HU-7) "without notifying S-2 medical department to transfer" Plaintiff's medical file and medications to the S-3 medical department. [Dkt. Nos. 10 at 21; 10-1 at 28]. Plaintiff further indicated in the grievance that he had been without any of his chronic care medications for four days (May 18-21, 2019), and that as a result he had severe chest pains, migraines and withdrawal pains in his back, arms, and legs. Id.

Nurse Bonner responded to Plaintiff's EG stating that Plaintiff's previous housing unit had been contacted and the remainder of his medications would be sent to Plaintiff's current location. [Id.]. Nurse Bonner's response, dated May 21, 2019 at 12:55 p.m., also advised Plaintiff that some of his medications were currently available, but that he had been noted as a "no show" for his medications the last three days. [Id.]. Plaintiff annotated the exhibit stating he did not receive the response until 5:15 p.m. on June 5, 2019. [Id.]. Another exhibit submitted by Plaintiff outlines the mechanics for the delivery of EGs — EGs "are brought to medical by security, they are dated, answered and returned to security to deliver back to the offender." [Dkt. No. 1-6 at 15].

2

On May 22, 2019, at 2:55 p.m. Plaintiff submitted EG No. 183357, which stated that he had not received a response to his May 21, 2019 EG and had yet to receive his medications. EG No. 183357 stated that Plaintiff continued to have symptoms of pain and withdrawal. [Dkt. No. 10-1 at 26]. A non-defendant, Nurse Baker, responded to EG No. 183357 and checked the box indicating that the EG did not meet the definition for an emergency and advised Plaintiff to report to the pill window to receive his current medications. [Id.]. Plaintiff annotated the exhibit stating he did not receive the response until May 25, 2019, at 10:15 a.m. [Id.].

*B. Claim 15, Nurse Thigpen*

Claim 15 alleges that Nurse Thigpen was deliberately indifferent to Plaintiff's serious medical needs on June 4, 2019 because she rejected plaintiff's second emergency grievance seeking medical care for symptoms that Plaintiff alleged he suffered from eating collard greens that he alleges also contained a "large dead cooked spider." [Id. at 24].[2] Plaintiff alleges he was suffering "severe pain ... vomiting, and severe migraines." [Id.].

On June 4, 2019, at 9:38 a.m., Plaintiff submitted EG No. 183218, which stated that on June 3, 2019, at 4:45 p.m. he had become ill after unwillingly consuming collard greens that contained a large, dead, cooked spider. [Dkt. Nos. 1 at 24-25; No. 10-1 at 40]. In the EG, Plaintiff complained of severe vomiting, excessive migraines, diarrhea, and sharp stomach pains. [Id.]. Nurse Thigpen responded to the grievance at 10:28 a.m. and checked the box indicating that the EG did not meet the definition for an emergency and directed Plaintiff to submit a sick call request. [Id.]. Plaintiff submitted a sick call request for evaluation of his symptoms [Id. at

---

[2] The defendants incorrectly state that "Plaintiff consumed a spider on June 3, 2019." [Dkt. No. 19 at 2]. The precise language of claim 15 is somewhat vague, "I had unwillingly consumed greens that also contained a large dead cooked spider" [Dkt. No. 10 at 24], but the original verified complaint, the verified amended complaint and the related exhibits make it clear that Plaintiff did not eat the dead spider. To the contrary, Plaintiff alleges that he ate collard greens and that the dead spider had been cooked with the collard greens. As Plaintiff stated in his original complaint, Plaintiff saw the spider and showed it to a correctional officer. [Dkt. Nos. 1 at 30; 1-4 at 28].

3

41-43], and was subsequently evaluated at a sick call 17 days later. [Dkt. 10 at 24]. Plaintiff was prescribed Motrin and Milk of Magnesia. [Dkt. No. 11 at 10].

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint sufficiently states a claim is determined by "the familiar standard . . . under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Accordingly, a plaintiff's alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id.

Where a complaint is filed by a prisoner acting pro se, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519, (1972). A pro se litigant is therefore not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106-07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979). For these reasons, a court's power to dismiss a prisoner's pro se complaint summarily is limited. Id. at 1347.

4

## III. Analysis

Plaintiff argues that because the Court found that he had stated a claim when the amended complaint was screened, the Court should deny the defendants' motion to dismiss. [Dkt. No. 30 at 3]. It is within the discretion of the Court to reconsider a prior ruling, see United States v. Huff, 782 F.3d 1221, 1225 (10th Cir. 2015), especially given the fact that the defendants had no opportunity to raise their position earlier. Id. at 1224; see also Gagliano v. Reliance Std. Life Ins. Co., 547 F.3d 230, 242 n. 8 (4th Cir. 2008) (district court has "considerable discretion in deciding whether to modify or amend a judgment"). In addition, while screening is similar to a Rule 12(b)(6) review, the defendants' motion to dismiss focuses on the issue of causation. See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009) (in addition to alleging a defendant's deliberate indifference to his medical needs, plaintiff must also prove causation between that indifference and his injuries); Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts ... require a demonstration of both but-for and proximate causation" and "intervening acts of other[s]" may "insulate" a defendant from liability). The thrust of the defendants' motion to dismiss is that the defendants' alleged *actions* or failure to act do not constitute deliberate indifference and that therefore the defendants' motion to dismiss must be granted.

To state a claim of deliberate indifference, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle, 429 U.S. at 105; Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v.

5

Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). A serious medical need is one that poses a substantial risk of serious injury to an inmate's health and safety. Young v. City of Mt. Ranier, 238 F.3d 567, 576 (4th Cir. 2001).

Second, a plaintiff must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not suffice. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). The treatment an inmate receives from a health care provider constitutes deliberate indifference only where it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. A defendant must act with either actual intent or reckless disregard, meaning that a defendant disregarded "a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52.

Importantly, as noted, to state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show

that an individual was personally involved in the deprivation of his civil rights."); see also Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978) (discussing "requisite causal connection" in § 1983 cases between named defendant and claimed injury).

*A. Serious Medical Need*

"Just as the relevant 'medical need' can only be identified in relation to the specific factual context of each case, the severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances," Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003). To that end, delay also plays a role in determining the seriousness of a medical need. "[T]he objective seriousness of the deprivation should be measured 'by reference to the *effect* of delay in treatment.'" Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997) (quoting Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds, Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)).[3]

> When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in "objective terms, sufficiently serious," to support an Eighth Amendment claim.

Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003).

Lastly, while delay of, or interference with, medical treatment can amount to deliberate indifference, see Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), there is no Eighth Amendment violation

> unless "the delay results in some substantial harm to the patient," such as a "*marked*" exacerbation of the prisoner's medical condition or "frequent complaints of severe pain." See Webb v. Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis added); see also Sharpe v. S.C. Dep't of Corr., 621 F.

---

[3] A delay in medical treatment claim must be "interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Hill, 40 F.3d at 1189.

App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (internal quotation marks omitted)).

Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018). Substantial harm may also be "a life-long handicap or permanent loss." Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Corr. Inst. Inmate v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and *the ease of providing treatment*." Id. at 758 (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).[4]

*B. Nurse Bonner*

Plaintiff alleges he was deprived of his medications for a discreet four-day period. [Dkt. No. 10 at 21]. Since Nurse Bonner is not alleged to have been involved with this claim other than her conduct on May 21, 2019, at most, Nurse Bonner is liable for a delay of one day.[5] In support of his claim of a serious medical need, Plaintiff relies upon his underlying medical conditions (HIV and hypertension) and alleges that being deprived of the medications for the four days resulted in severe chest pains, migraines and withdrawal pains in his back, arms, and legs. [Dkt. Nos. 10 at 21; 10-1 at 28].

Plaintiff's claim against Nurse Bonner is premised on her decision that Plaintiff's complaint did not constitute an emergency and her failure to provide him immediately with his

---

[4] An inmate who complains that a delay in medical treatment is a constitutional violation "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188. Further, the "[t]olerable length of delay in providing medical attention depends on the nature of the medical need and the reason for delay." Id. (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)).

[5] Plaintiff also fails to note that the delay in the delivery of the response to him is not attributable to Nurse Bonner because his exhibits indicate that she is not the person who returns the EG to the inmate. [Dkt. No. 1-6 at 15]. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted) (in considering a dispositive motion, a court may "consider documents that are explicitly incorporated into the complaint by reference ... and those attached to the complaint as exhibits," as well as any document submitted by the movant if the document was "integral to the complaint and there is no dispute about the document's authenticity.").

8

medications. In short, Nurse Bonner determined that the appropriate course of treatment was to direct Plaintiff to his medical unit for the medications currently available while she directed the prior medical unit to transfer his other medications to the new medical unit. Plaintiff's disagreement over the course of treatment is insufficient to establish deliberate indifference. See Wright, 766 F.2d at 849. Indeed, the fact that Plaintiff points to no specific health detriment from missing his medication (whether for one days or several days) demonstrates another independent reason as to why Plaintiff has failed to establish a claim of deliberate indifference against Nurse Bonner.

Plaintiff does not allege any harm or change in either of his underlying conditions (HIV and hypertension) from the delay in receiving his medication. Plaintiff's failure to allege any such harm is fatal to his claim despite the temporary symptoms he alleges. See King v. Kilgore, No. 96-40126, 1996 U.S. App. LEXIS 43242, *1 (5th Cir. Sept. 9, 1996) (affirming district court's dismissal of prisoner's deliberate indifference claim where prisoner failed to establish substantial harm from delay in treatment that allegedly prolonged his asthma attack, causing "him pain, suffering, and discomfort").

If Plaintiff seeks to allege that Nurse Bonner, who was not dispensing medication, should have insured he received his medication the day that he filed his grievance, May 21, 2019, such an alternative theory also does not state a claim of deliberate indifference because it amounts to a claim that she caused him to miss a single dose of his medications. Missing a single dose, or several doses, of a needed medication, without more, is insufficient to establish an Eighth Amendment violation.[6]

---

[6] See Smith, 316 F.3d at 188-89 (affirming denial of motion for new trial for Eighth Amendment violation where plaintiff "presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health"); Ferguson v. Cai, No. 11cv6181, 2012 U.S. Dist. LEXIS 97049, at *13-14 (S.D.N.Y. Jul 12, 2012) (missing single dose of insulin that caused temporary blindness, pain, and leg swelling not actionable);

9

Further, examining Nurse Bonner's actual conduct negates a claim that she was deliberately indifferent to Plaintiff's medical need. There is no allegation that Nurse Bonner had any knowledge prior to reviewing Plaintiff's May 21, 2019 EG that he needed medication. Indeed, Plaintiff alleges in his amended complaint that the reason he did not have his medications after he was moved was due to the conduct of the two correctional officers that moved him to a different housing unit on May 17, 2019. Plaintiff alleges that their failure to notify the new medical unit servicing his new housing assignment that Plaintiff had been moved was an act of retaliation. [Dkt. No. 10-1 at 28]. Consequently, even assuming claim 11 states a claim, the claim against Bonner fails to establish the requisite causation to withstand the motion to dismiss.[7] See, supra at 5, 6.

To be sure, Nurse Bonner's actual alleged conduct negates deliberate indifference as well. Nurse Bonner investigated Plaintiff's EG, confirmed that Plaintiff's medications would be forwarded to the correct medical unit, responded within two hours (although apparently the response was not delivered to Plaintiff until June 5, 2019) and Plaintiff had his medications at

---

Bumpus v. Canfield, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (dismissing claim of deliberate indifference based on "a delay of several days in dispensing plaintiff's hypertension medication" absent evidence that "the delay gave rise to a significant risk of serious harm"); Jackson v. Fauver, 334 F. Supp. 2d 697, 718 (D.N.J. 2004) (holding that a six week delay in receiving HIV/AIDS medication did not state a claim for cruel and unusual punishment where the plaintiff did not establish any harm caused by the delay); Evans v. Bonner, 196 F. Supp. 2d 252, 256 (E.D.N.Y. 2002) (granting summary judgment for defendant on claim that medication was not timely distributed even where plaintiff alleged that he had suffered "aches, pains and joint problems" due to withdrawal because "the alleged injury to the plaintiff resulting from not getting his medicine on time does not rise to a sufficiently serious level."); see also Nolley v. County of Erie, 776 F. Supp. 715, 740 (W.D.N.Y. 1991) (the occasional failure of the correctional facility to provide an inmate with her AZT medication did not violate the Eighth Amendment as the failure was due to a negligent medication delivery system, and not to a deliberate indifference on the part of medical personnel).

[7] Indeed, in claim 9, Plaintiff alleges that defendants Coleman and Green intentionally failed to notify the medical department that Plaintiff had been moved and that it was their actions that "forced" him to go without his "medications for four (4) str[a]ight days…. May 18 through May 21, 2021." [Dkt. No. 10 at 18-19]. See Soo Line R.R. v. St. Louis Southwestern Ry., Co., 125 F.3d 481, 483 (7th Cir. 1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts."). In viewing the record in the light most favorable to plaintiff, the court assumes the credibility of the plaintiff's evidence unless it is "facially incredible." Willis v. Town of Marshall, North Carolina, 275 F. App'x 227, 235 (4th Cir. 2008) (citing Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)).

some point the next day. Nurse Bonner's actions and the minor delay attributable to her do not constitute deliberate indifference. See Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015) ("[A] two-day delay is not enough, standing alone, to show a culpable mental state. The delay may or may not have been negligent, but it did not constitute deliberate indifference for purposes of the Due Process Clause of the Fourteenth Amendment."); Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (alleged delays in administering pain medication, without more, do not constitute deliberate indifference). VanCourt v. Lehman, 137 F. App'x 948, 950 (9th Cir. 2005) (one day delay in receiving pain medication for head injuries and a broken nose suffered in an attack did not demonstrate deliberate indifference to a serious medical need); see also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) ("A finding that the defendant's neglect of a prisoner's condition was an 'isolated occurrence,' or an 'isolated exception,' to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference." (citations omitted), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (1997) (en banc). Plaintiff's claim that Nurse Bonner was deliberately indifferent to Plaintiff's need for his medications therefore must be dismissed.

 *C. Nurse Thigpen*

 Plaintiff's complaint against Nurse Thigpen is, in essence, also a dispute about whether his complaint constituted an emergency. Plaintiff submitted an EG on June 4, 2019, at 9:38 a.m., which stated that he became ill after unwillingly consuming collard greens that had also contained a large, dead, cooked spider the previous day at 4:45 p.m. [Dkt. Nos. 1 at 24-25; No. 10-1 at 40]. In the EG, Plaintiff complained of severe vomiting, excessive migraines, diarrhea, and sharp stomach pains. [Id.]. Nurse Thigpen responded to the EG at 10:28 a.m., determined the EG did not meet the definition for an emergency, and directed Plaintiff to submit a sick call

11

request. [Id.]. Plaintiff states he was not seen by medical for another 17 days, but he does not indicate all of the alleged complaints of vomiting, migraines, diarrhea, and sharp stomach pains continued after the date of the EG.[8] Plaintiff attributes the delay to Nurse Thigpen, but there is no allegation that she had any involvement with the scheduling of his sick call request.

The focal point of Plaintiff's claim against Nurse Thigpen, therefore, is her determination that his medical need was not an emergency — which is an exercise of medical judgment by a provider. However, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999) (citing Estelle, 429 U.S. at 107; Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir.1993)); accord Wright, 766 F.2d at 849 (holding that disagreements between a medical provider and an inmate "over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim for purposes of 42 U.S.C. § 1983); see also Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977) (the "propriety or adequacy of a particular course of treatment" is committed to the "sound professional judgment" of the medical provider and the "courts will not intervene upon allegations of mere negligence, mistake or difference of opinion"). The Plaintiff does not allege any facts that demonstrate Nurse Thigpen's determination that his EG failed to constitute an emergency and her direction to him to submit a sick call request were the result of deliberate indifference. In short, plaintiff simply disagreed

---

[8] Other portions of the complaint indicate that Plaintiff's physical complaints were not debilitating because he was in the control booth talking with Correctional Officer Winbush on June 6, 2019 [Dkt. 10 at 23]; in the "chow hall" on June 6, 2019 [Dkt. No. 1-4 at 5], having conversations with Unit Manager Evans on June 6, 2019 [Id. at 11, 14]; and was able to file informal complaints on June 3, 2019 and June 4, 2019, and a grievance on June 5, 2019. [Dkt. Nos. 1-3 at 14; 1-6 at 6, 15].

with Nurse Thigpen's determination that there was no emergency and that a sick call request was the more appropriate means for plaintiff to obtain treatment.[9]

Plaintiff also does not allege any facts that indicate the delay resulted in the requisite substantial harm necessary to state a claim of deliberate indifference. See Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006) (holding that a delay in medical care must cause "substantial harm" to be a constitutional violation). A district court in Texas addressed a similar claim and found no Eight Amendment violation

> A delay which does not aggravate or exacerbate the medical condition does not constitute a constitutional violation. Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988). A delay in medical care to a prisoner can constitute an Eighth Amendment violation only if there has been deliberate indifference, which results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). The fact that plaintiff suffered headaches and dizziness while waiting for an opportunity to see a physician does not constitute substantial harm.

McQueen v. Revell, No. 2:01cv88, 2001 U.S. Dist. LEXIS 17155, *11-12 (N. D. Tex. Oct. 22, 2001); see, e.g., McKenzie v. Magee, No. 94-3260-RDR, 1997 U.S. Dist. LEXIS 13536, *7-8, 1997 WL 542938 (D. Kan. Aug. 4, 1997) (dismissing claim of deliberate indifference because there was "no evidence plaintiff's condition required immediate attention" and "no evidence [plaintiff] suffered substantial harm from the alleged delay"). Indeed, when Plaintiff was seen by a provider, he was given over the counter medications (Motrin and Milk of Magnesia) to treat his complaints, which indicates that the delay did not exacerbate his condition. The allegations in claim 15 do not state a claim of deliberate indifference with regard to Nurse Thigpen's conduct and therefore must be dismissed.

---

[9] In a grievance related to the "spider incident," Plaintiff indicated he was treated with "pain killers" and "Milk of Magnesia." [Dkt. Nos. 1-6 at 29; 1-7 at 1]. Plaintiff submitted a medical record that indicates the "pain killers" were Motrin. [Dkt. No. 11 at 10].

## IV. Conclusion

For the reasons outlined above, defendants Bonner's and Thigpen's motions to dismiss [Dkt. No. 18] will be granted through an Order that will issue alongside this Memorandum Opinion.

Entered this 17th day of August 2021.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge