## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Tamar D. Harvey,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:20cv605 (TSE/TCB) |
| | ) | |
| Sergeant Hobbs, et al., | ) | |
|     Defendants. | ) | |

### MEMORANDUM OPINION

Plaintiff Tamar D. Harvey ( "Harvey"), proceeding pro se, filed an amended civil rights

complaint under 42 U.S.C. § 1983 against nineteen defendants who work for the Virginia

Department of Correction ("VDOC") at Greensville Correctional Center ("GRCC"). At issue

now is a motion by fourteen defendants seeking dismissal of some claims and summary

judgment on other claims. Harvey was notified that he had the opportunity to file responsive

materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has done so. [Dkt.

Nos. 50, 54, 55, 56, 66].[1] Accordingly, this matter is now ripe for disposition. For the reasons

that follow, the motion for summary judgment must be granted for Claims 1, 3, 4, 6, 7, 10, 12,

13, 14, 16, and 17 and the motion to dismiss with be granted in part and denied in part.

---

[1] Two of the three remaining defendants (L. Mays, and J. Harris) were originally designated as "Jane Does." In
Claim 5, Harvey alleges defendants Spates, Mays, and Harris were indifferent to his physical safety on October 3,
2018. Defendant Spates has not been served. The Court sent a Notice of Lawsuit and Waiver of Service of Summons
("Notice") and counsel for the defendants declined representation as Spates was no longer a VDOC employee. [Dkt.
No. 24]. A second Notice was sent to Spates last known address, but there has been no response. [Dkt. No. 31, 32].
Defendants Mays and Harris filed a motion to dismiss on December 9, 2021. [Dkt. No. 81]. Harvey has been
afforded the opportunity to file responsive materials pursuant to Roseboro and has done so. [Dkt. No. 84]. The Court
will address that motion in a separate memorandum.

## I.

Before analyzing the substantive questions at issue in the pending motions, it is necessary to review the procedural history of this case and the claims asserted by Harvey.  Harvey's original complaint alleged twenty-five claims against thirty-one defendants. [Dkt. No. 1]. In an Order dated July 15, 2020, three defendants (VDOC, the Commonwealth of Virginia, and GRCC) were dismissed with prejudice and Harvey was granted leave to file an amended complaint. [Dkt. No. 5]. On August 18, 2020, Harvey filed the current amended complaint, which alleges seventeen violations of his constitutional rights by nineteen defendants working for and within the VDOC at the GRCC.[2] [Dkt. No. 10].

Two of the medical defendants, Nurses Bonner and Thigpen, filed motions to dismiss the claims asserted against them (Claims 11 and 15) on November 13, 2020.  Harvey was advised of his right to respond in accordance with Roseboro, and he filed a response in opposition on November 27, 2020. [Dkt. No. 30]. By Order dated August 17, 2021, the motion to dismiss was granted and Claims 11 and 15 were dismissed. [Dkt. No. 74].

The remaining claims at issue in Harvey's amended complaint include the following allegations:

> Claim 1: Defendants Robinson, Herrick, and Cosby violated Harvey's Eighth Amendment because they were deliberately indifferent to his serious medical needs and his conditions of his confinement from February 2018 through June 23, 2019 because he was served processed meats and by-products, which caused him hemorrhoids, anal dryness, and other health issues. [Dkt. No. 10 at 12].

> Claim 2: Defendants Coleman, Bailey, and Holloway violated Harvey's Eighth Amendment because they were deliberately indifferent to his serious medical needs and the conditions of his confinement from April 3, 2018 through July 6,

---

[2] The amended complaint did not allege claims against the following defendants who Harvey had listed in his original complaint: LPN Baker, RN E. Shaw, Hearings Officer Pilgram, David A. Robinson, Grievance Coordinator Phillips, S. Tapp, Captain Banes (also referred to as "Baines"), E. Clay, and Armor Correctional Health Services. Accordingly, these defendants will be dismissed without prejudice.

2018, depriving him of adequate indoor and outdoor recreation time, which caused him hemorrhoids, anal dryness, and other health issues. [Id. at 13].

Claim 3: Defendants Coleman, Barns (Barnes), and Green violated Harvey's First Amendment rights because the defendants retaliated against him on July 3, 2018 for filing grievances and complaints about them by "trash[ing]/ransack[ing]" his cell. [Id. at 13-14].

Claim 4: Defendants Coleman, Barns (Barnes), and Green violated Harvey's First Amendment rights on July 6, 2018 because they retaliated against him for filing grievances and complaints about them by "trash[ing]/ransack[ing]" his cell. [Id. at 14-15].

Claim 5: Defendants Spates, Mays, and Harris violated Harvey's Eighth Amendment rights were deliberately indifferent to Harvey's risk of being attacked, which occurred after his transfer to Section 3, which resulted in his being attacked on October 14, 2018 by another inmate. [Id. at 15-16].

Claim 6: On December 20, 2018, Defendant Warren violated Harvey's First Amendment right by denying him access to the courts because she failed to mail a document (related to service) requested by the federal district court in the Western District related to Harvey's lawsuit (No. 7:18cv97) against persons at the Augusta Correctional Center and telling Harvey (via Coleman) that Counsel for Defendants in his other case were dead. [Id. at 16].

Claim 7: Defendants Warren, Jones, and Ray violated Harvey's First Amendment rights by denying him access to the courts because they opened his outgoing legal mail and refused to mail a Notice of Claim lawsuit on May 16, 2019. [Id. at 17].

Claim 8: Defendants Coleman and Green violated Harvey's First Amendment rights by retaliating against him by moving him to "Section 3"on May 17, 2019, where "[his] risk of physical/sexual attack was very pervasive," because he had filed grievances and a lawsuit against both related to Harvey's television. [Id. at 18].

Claim 9: Defendants Coleman and Green violated Harvey's Eighth Amendment rights because they were deliberately indifferent to his serious medical needs and the conditions of his confinement because they moved him on May 17, 2019 to Section 3 and did not notify the Section 2 medical department that he was being moved, which resulted in Harvey being without his HIV and hypertension medications for four days. [Id. at 18-19].

Claim 10: Defendants Hobbs and Woodbury violated Harvey's Eighth Amendment rights to his conditions of confinement on May 17, 2019 because they refused to provide Harvey with a state-issued pillow or secure him a "bottom bunk per doctor's orders." [Id. at 19-20].

Claim 12: Defendant Hobbs violated Harvey's First Amendment rights by "ransacking" Harvey's cell twice in a two-hour period in retaliation for grievances and complaint that Harvey had filed against Hobbs. [Id. at 21-22].

3

Claim 13: On June 3, 2019, Defendants Hobbs and Robinson violated Harvey's Eighth Amendment rights because they were deliberately indifferent to his serious medical needs and the conditions of his confinement because they "allowed" him to be served a meal that contained a cooked spider in his side item of greens. [Id. at 22-23].

Claim 14: On June 3, 2019, Defendant Hobbs violated Harvey's Eighth Amendment rights because he was deliberately indifferent to his serious medical needs when Hobbs threw away Harvey's emergency grievance seeking medical treatment after Harvey had eaten greens that contained a spider, but that Harvey did not eat. [Id. at 23-24].

Claim 16: Defendant Delbridge violated Harvey's Eighth Amendment rights because he was deliberately indifferent to his serious medical needs when Delbridge "backlogged" Informal Complaint Nos. GCC-19-INF-04132, -04239, -04242, -04243, -04528 (medical grievances requesting medical care) between four to eight days before logging them. [Id. at 25-26].

Claim 17: Defendants Herrick and Cosby violated Harvey's Eighth Amendment rights because they were deliberately indifferent to Harvey's serious medical needs when they mishandled his appeal of the intake decision related to Informal Complaint Nos. GCC-19-INF-04260, -04516, -04528. [Id. at 26-27].

On May 17, 2021, fourteen of the remaining defendants (Sgt. Hobbs, Sgt. Woodbury, Sgt. Barns,[3] Ralph R. Coleman, Timothy W. Green, L. H. Delbridge, Kitchen Manager Robinson, M. A. Bailey, Tracy S. Ray, Gregory L. Holloway, Dr. Steve Herrick, K. Cosby, J. Jones, and S. Warren) filed a motion to dismiss and for summary judgment, along with a brief in support and attachments. [Dkt. Nos. 46, 47]. The motion asserts that Harvey failed to exhaust his administrative remedies on Claims 1, 3, 4, 6, 7, 10, 12, 13, 14, 16, and 17 before filing suit in this Court and thus these claims are barred pursuant to the Prison Litigation Reform Act ("PLRA"). The motion also argues that certain claims should be dismissed: (i) because Harvey fails to state a claim; (ii) because Harvey fails to allege a sufficiently serious injury; or (iii) because Harvey has failed to allege sufficient personal involvement by supervisory defendants. Harvey was

---

[3] Sgt. Barns is also referred to as Barnes.

notified he had the opportunity to file responsive materials pursuant to <u>Roseboro</u> and he has done so. [Dkt. Nos. 50, 54, 55, 56, 66].[4]

## I. Undisputed Statement of Facts[5]

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that the defendants contend are undisputed. Harvey's attempts to comply with Rules 56 fails;[6] he did not submit a coherent statement of disputed and undisputed

---

[4] Two of the three remaining defendants (L. Mays, and J. Harris) were originally designated as "Jane Does." In Claim 5, Harvey alleges defendants Spates, Mays, and Harris were indifferent to his physical safety on October 3, 2018. Defendant Spates has not been served. The Court sent a Notice of Lawsuit and Waiver of Service of Summons ("Notice") and counsel for the defendants declined representation as Spates was no longer a VDOC employee. [Dkt. No. 24]. A second Notice was sent to Spates last known address, but there has been no response. [Dkt. No. 31, 32]. Defendants Mays and Harris filed a motion to dismiss on December 9, 2021. [Dkt. No. 81]. Harvey has been afforded the opportunity to file responsive materials pursuant to <u>Roseboro</u> and he has done so. [Dkt. No. 84]. That motion will be addressed in a separate memorandum opinion or order.

[5] The undisputed facts concern only Claims 1, 3, 4, 6, 7, 10, 12, 13, 14, 16, and 17, on which the defendants' seek summary judgment for failure to exhaust. The defendant seeks to dismiss Claims 2, 8, and 9 (as well as alternative ground for dismissal of Claims 1, 3, 4, 6, 7, 10, 12, 13, 14, 16, and 17) under the Rule 12(b)(6) standard, and the Court will consider Harvey's well-pleaded allegations as true and the amended complaint will be viewed in the light most favorable to him. See <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

[6] Harvey's responses following the filing of the motion for summary judgment fail to comply with Local Rule 56(B).

> Local Rule 56(B) requires a brief opposing a motion for summary judgment to include "a specifically captioned section listing all material facts as to which it is determined that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on." Local Rule 56 further provides that the movant's undisputed facts are deemed admitted "unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

<u>JDS Uniphase Corp. v. Jennings</u>, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007); <u>see, e.g.</u>, <u>Integrated Direct Mktg., LLC v. May</u>, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), <u>aff'd</u>, 690 F. App'x 822 (4th Cir. 2017).

The Court denied several of Harvey's motions for discovery in an Order dated March 4, 2022 because they sought discovery regarding the merits of his claims and were not relevant to the motion for summary judgment, which concerns the exhaustion of the claims. [Dkt. No. 86]. In response to the Order, Harvey has filed another motion seeking discovery, with a supporting affidavit, but the affidavit asserts in a conclusory fashion that his claims are exhausted. [Dkt. No. 87]. As noted herein, Harvey's conclusory assertion is not based upon fact or a correct reading of VDOC OP 866.1, and his motion for leave to conduct discovery must be denied.

facts.[7] Harvey's response is cumbersome and confusing. Where Harvey fails to rebut the facts set

forth in defendants' motion for summary judgment, Gholson v. Murray, 953 F. Supp. 709, 714

(E.D. Va. 1997), the Court has accepted defendants' statement of facts as true. See Integrated

Direct Mktg., LLC v. May, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion

for summary judgment, the Court may assume that facts identified by the moving party in its

listing of material facts are admitted, unless such a fact is controverted in the statement of

genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), aff'd, 690 F.

App'x 822 (4th Cir. 2017); see also JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 707

(E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's

response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D.

Va. Loc. Civ. R. 56(B)).[8]  Applying those principles here, the undisputed facts are as follows:

---

[7] Moreover, to the extent Harvey seeks to amend his complaint by raising new matters in his responses to the defendants' motion, he may not do so through a brief in response to a motion for summary judgment. See Hurst v. District of Columbia, 681 F. App'x 186, 194 (4th Cir. 2017) ("a plaintiff may not amend her complaint via briefing") (citing Commonwealth of Pennsylvania v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)); Zachair, Ltd. v. Driggs, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (a plaintiff is "bound by the allegations contained in [his] complaint and cannot, through the use of motion briefs, amend the complaint."), aff'd, 141 F.3d 1162 (4th Cir. 1998). Any such claims raised in his several oppositions are not properly before the Court, and they will not be addressed here.

[8] The record of admissible evidence includes defendants' affidavits and exhibits. [Dkt. Nos. 47-1, 47-2]. Harvey's original complaint and amended complaints were verified, as is his multi-part response to the motion for summary judgment. [Dkt. Nos. 1, 10, 10-1, 11, 54-56, 65-66]; see Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit"). It is Harvey's burden, as the nonmovant in responding to a motion for summary judgment, to go beyond pleadings. To satisfy this burden, Harvey must designate specific facts in the record and articulate the precise manner in which they support his claim. See Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).

Portions of Harvey's sworn pleadings are either, hearsay, conclusory, or irrelevant to the motion for summary judgment. For example, in Part 2 of one of his responses, Harvey filed 217 pages of disjointed and awkward arguments and unorganized exhibits. [Dkt. No. 66]. In that response, he only mentions eight specific grievances or informal complaints [Id. at 34, 36, 66, 71, 72, 83, 85], even though the defendants have referenced the specific informal complaints and grievances associated with each claim, and the only pertinent informal complaints or grievances he references concern Claim 7. [Id. at 34-36). The disjointed, unorganized, and confused presentation is also demonstrated by references to exhibits that are not attached to the response or otherwise identified so that they can be located and reviewed if they are elsewhere in the record.

For instance, in his July 14, 2021 response, Harvey refers to "exhibits" by designating them "C. Ex. #__". On page 32, Harvey cites three exhibits (C. Ex. Nos. 11, 12, 13), but the three exhibits are either not attached to the pleading, or Harvey has failed to provide any guidance as to where else they might be found in the record. The exhibits attached to the pleading are designated "Major Supporting Exhibit # __," and "Counter Attachment # __," but the

1. Harvey is a VDOC inmate who was incarcerated at GRCC at the times relevant to his claims.

2. At all times relevant to the Amended Complaint, defendants were VDOC employees employed at GRCC, with the exception of Herrick and Cosby. Herrick and Cosby are VDOC employees who work at another location.

3. K. Phillips ("Phillips") is the Human Rights Advocate at GRCC and is responsible for maintaining grievance files on inmates at GRCC. [47-1 at ¶ 1].

VDOC's Grievance Procedure

4. VDOC Operating Procedure ("OP") 866.1, Offender Grievance Procedure, is a mechanism for offenders to resolve complaints, appeal administrative decisions and challenge the substance of prison procedures. The process provides prison administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. A

---

attached exhibits with those numbers (11, 12, and 13) have no rational connection to the text of the pleading. See Dkt. No. 66 at 32, 128-30, 151-53 (referencing Ex. Nos. 11, 12, and 13). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Id. (Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)); see also United States v. 5443 Suffield Terrace, 607 F.3d 504, 510 (7th Cir. 2010) ("[I]t was not the district court's job to sift through the record and make [the party's] case for him."); Jones v. Sheehan, Young, & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996) (court has no "duty to survey the entire record in search of evidence to support a non-movant's opposition."). While the Court is mindful of its duty to construe a pro se litigant's pleadings liberally, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), a district court is neither required to act as an advocate for a pro se litigant, id., nor to "sift through" pleadings in an attempt to construct legal arguments or theories for him. See Fields v. Romer, 2000 U.S. App. LEXIS 27291, *10 (10th Cir. Oct. 30, 2000) (citation omitted); United States v. Tooley, 521 F. App'x 644, 646 (10th Cir. 2013) ("court cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record") (quoting Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005)); cf. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (holding, in the context of Rule 8, a court may dismiss a complaint that is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.").

Harvey also makes assertions that are incorrect. For instance, Harvey appears to believe, incorrectly, that he has satisfied the exhaustion requirement if he appeals the rejection of a grievance at the intake stage. See, e.g., Dkt. No. 66 at 36-39 (referencing rejected grievances and informal complaints as satisfying exhaustion). Appealing an "intake decision," however, does not exhaust the claim in the grievance if the inmate has "another available administrative remedy—refiling the deficient regular grievance." Wall v. Stevens, No. 7:16cv373, 2019 U.S. Dist. LEXIS 51159, *12 (W.D. Va. Mar. 26, 2019) aff'd, 775 F. App'x 761 (4th Cir. 2019); see also Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("[P]roper exhaustion demands compliance with an agency's deadlines and *other critical procedural rules* because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding." (emphasis added)).

copy of OP 866.1, effective July 1, 2016, applies to the time period during which Harvey submitted his complaints. [Id. at ¶ 4].

5. All issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal court decisions, laws, and regulations, and matters beyond the control of the VDOC. Each offender is entitled to use the grievance procedure for problem resolution. VDOC policy provides that prisoners are not punished for filing grievances in good faith. [Id. at ¶ 5].

6. Grievances are to be submitted within 30 calendar days from the date of an alleged incident. Prior to submitting a regular grievance, the offender must demonstrate that he has made a good faith effort to resolve his complaint informally. This may be accomplished by submitting an informal complaint form to the appropriate department head. Prison staff should respond to the offender's informal complaint within 15 calendar days to ensure that the informal response is provided prior to the expiration of the 30-day time period in which an offender may file his regular grievance. When filing his formal grievance, the offender must attach any required documentation to his attempt to resolve the issue informally. Only one issue is permitted per grievance form. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit. [Id. at ¶ 6].

7. Grievances that do not meet the filing requirements of OP 866.1 are returned to the offender within 2 working days from the date of receipt noting the reason for return on the intake section of the grievance form. Reasons include but are not limited to: more than one issue per grievance, expired filing period, repetitive of other grievances already filed, request for services, etc. When feasible, an offender is instructed how to remedy any problems with the grievance. A copy is made of all grievances returned to the offender with the justification for return noted on

8

the second page of the grievance form. If an offender wishes review of the intake decision on any grievance, he may send the grievance to the Regional Ombudsman for a review. There is no further review of the intake decision. An appeal of the intake decision, by itself, does not satisfy the exhaustion requirement. [Id. at ¶ 7].

8. If a grievance is accepted during the intake process, there are 3 levels of review available for regular grievances. Level I reviews are conducted by the Warden or Superintendent of the prison. If the offender is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Deputy Director or Director of VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal. [Id. at ¶ 8].

9. An offender may file an emergency grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. Emergency grievance forms are available on a 24-hour basis regardless of housing status. An emergency grievance should be responded to within 8 hours. If the issue does not subject the offender to immediate risk of serious personal injury or irreparable harm, the staff person rejects the emergency grievance and indicates this on the emergency grievance form and signs it with the date and time. If the issue subjects the offender to immediate risk of serious personal injury or personal harm, the staff person determines if he/she can address the issue or if it needs to be forwarded to a higher authority for resolution. Filing an emergency grievance does not satisfy the

exhaustion requirement. In order to satisfy the exhaustion requirement, the offender must submit

his complaint by filing a regular grievance with the appropriate informal complaint and appeal it

through all available appeal levels. [Id. at

¶ 9].

10. Phillips reviewed Harvey's grievance file at GRCC for all grievances related to the

allegations in this lawsuit. [Id. at ¶ 10].

Claim 1: Processed Meat/By Products

11. Harvey submitted Informal Complaint No. GCC-19-INF-03893, dated May 27, 2019,

complaining that he was being continually harmed from the excessive daily servings of

processed meat products. He stated that he had chronic hemorrhoids and that he is to be provided

with nutritionally adequate meals. Defendant Robinson in Food Service provided a response on

June 4, 2019, stating that GRCC serves meals that comply with VDOC policy and that, if Harvey

had medical issues, Food Service required medical documentation. [Id. at ¶ 11; at 44].

12. Harvey submitted a regular grievance dated June 11, 2019, which was received, and

date stamped June 18, 2019. In that grievance, Harvey complained that he had been served daily

meals with processed meat products while at GRCC and that he had been seriously harmed from

consuming those meals. He stated in his grievance that he had previously provided medical

documentation that he was to receive a vegetarian diet but asserted that the kitchen had not

honored the doctor's orders and only served Harvey a bean tray. Harvey requested to be placed

on the Common Fare Diet. [Id. at ¶ 12; at 42].

13. Former Human Rights Advocate Tapp ("Tapp") rejected the grievance during the

intake process on June 18, 2019, checked the box indicating that there was insufficient

information, and directed Harvey to provide the grievance office with "medical documentation

10

that you cannot have this meat & ha[ve] been harmed by it." [Id. at 43]. Tapp did not assign a log number to the grievance and returned it to Harvey. [Id. at ¶ 13].

14. Harvey resubmitted the grievance on June 21, 2019, with a copy of five pages from his medical file. The medical documents Harvey had attached neither indicated Harvey needed a dietary change nor did prison staff approve or order a dietary change. [Dkt. No. 47-1 at 45-49].[9] On June 21, 2019, Phillips rejected the grievance during the intake process because it lacked sufficient information and Harvey needed to provide "documentation of [an] approved diet change." [Id. at ¶ 14; Dkt. No. 1-4 at 18].

15. Harvey's appeal of the intake decision was received by the Regional Ombudsman on July 9, 2019. [Dkt. No. 1-4 at 17, 18]. Regional Ombudsman Cosby ("Cosby") responded to Harvey's appeal on July 10, 2019 by returning the intake decision to him because the five-day time limit for review had been exceeded. [Dkt. No. 47-1 at ¶ 15].[10]

16. Harvey filed no further complaints or regular grievances on this issue and did not exhaust his administrative remedies regarding this claim. [Id. at ¶ 16].

---

[9] Harvey submitted Offender Requests on June 3, 2019 and June 21, 2019 requesting to be placed on the Common Fare diet. [Dkt. No. 66 at 123-24]. He was approved for the Common Fare diet on June 24, 2019. [Id. at 125-26].

[10] If a grievance is *rejected* at intake, then VDOC OP 866.1 VI(B)(5) (presently VDOC OP 866.1 IV(D)(1)(a)) only provides for an appeal of an intake decision to the Regional Ombudsman. [Dkt. No. 47-1 at 34]. If a grievance is *accepted* and the inmate is not satisfied with the Level I review, the offender can pursue a Level II appeal to the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. [Id. at 35]. Harvey avers that since his grievance involved "medical issues," he filed his appeal of the intake decision to the Director of Health Services. [Dkt. No. 55 at 12]. Harvey submitted a copy of his grievance that is stamped July 1, 2019, and he alleges that the Director of Health Services forwarded the appeal to the Regional Ombudsman who then stamped it received on July 9, 2019. [Dkt. Nos. 55 at 12-13; 1-4 at 16]. The Office of Health Services July 1, 2019 stamp only appears on a copy of the informal complaint, and not on any of the related documents including Harvey's statement in support of his appeal directed to the Office of Health Services. In any event, this dispute is not relevant to exhaustion because Harvey admits he sent the appeal of the intake decision to the wrong component of the VDOC. Harvey has no excuse for his erroneous appeal because the grievance form clearly states that if Harvey disagreed with the intake decision, he had five calendar days from his receipt of the intake decision to submit it "to the Regional Ombudsman for a review of the intake decision. The Regional Ombudsman's decision is final." [Dkt. No. 1-4 at 18]; see, infra at note 28 (discussing similar misdirected appeals and noting Harvey knew how to appeal to the Regional Ombudsman). Appealing an "intake decision," however, does not exhaust the claim in the grievance because Harvey had "another available administrative remedy—refiling the deficient regular grievance." Wall, 2019 U.S. Dist. LEXIS 51159, *12.

### Claim 3: Retaliation on July 3, 2018, Cell Search

17. Harvey submitted Informal Complaint No. GCC-18-INF-04454, dated July 3, 2018, complaining that Coleman and Barnes retaliated against him for filing grievances against them. Unit Manager ("UM") Green's undated and unsigned response stated that searching Harvey's cell did not constitute a hostile situation and cells are subject to routine searches. [Dkt. No. 47-1 at ¶ 17; at 55; 1-1 at 26].

18. Harvey submitted a regular grievance dated July 31, 2018, complaining that Coleman searched and ransacked his cell (No. 303 HU6) in retaliation because he had filed grievances against him. The grievance office received, and then date stamped the grievance on August 2, 2018. On August 2, 2018, Tapp rejected the grievance during the intake process because it contained more than one issue (the search of the cell and verbal harassment). Harvey was advised to resubmit his complaint. Tapp did not assign a log number to the grievance and returned it to Harvey. [Id. at ¶ 18; at 53]. Harvey did not resubmit the grievance and instead appealed the intake decision on August 13, 2019 where Cosby upheld the intake decision. [Dkt. No. 1-1 at 28]. Harvey did not resubmit his complaint. [Id. at ¶ 19].

### Claim 4: July 6, 2018 Removal from SAM[11] Pod

19. Harvey submitted Informal Complaint No. GCC-18-INF-04546, dated July 6, 2018, complaining that Coleman had removed him from the SAM pod while Harvey was in the law library working on a lawsuit he had filed. UM Green responded on July 13, 2018, and noted that, if Harvey was not assigned to the SAM pod, he was subject to being moved out to accommodate

---

[11] "SAM" apparently stands for Shared Allied Management pod and is designed to facilitate providing services to inmates with mental health diagnoses that present management issues in other units, medical conditions that require frequent nursing attention, and individuals who are vulnerable to predation or bullying. [Dkt. No. 10-1 at 23].

those assigned to the SAM pod. Green also noted that there is law library access in every housing cluster. [Id. at ¶ 20; at 58].

20. Harvey submitted a regular grievance dated July 31, 2018, complaining that Green had not resolved his complaint and that Coleman had removed him from the SAM pod in retaliation for Harvey filling grievances against him, not because Harvey had not been assigned to the SAM pod. Harvey wrote that Coleman and Green "are both liars." [Id. at 56]. The grievance office received and then date stamped Harvey's grievance on August 2, 2018. [Id. at ¶ 21; at 56].

21. On August 2, 2018, Tapp rejected Harvey's grievance during the intake process because of vulgar/insolent or threatening language in the grievance, did not assign it a log number, and returned it to Harvey. Harvey did not appeal the intake decision. [Id. at ¶ 22].[12]

22. Harvey's grievance file does not document any Informal Complaints or grievances regarding his allegation that HU8 is called "gangland." [Id. at ¶ 23].

23. Harvey did not exhaust the administrative remedies available to him regarding his allegations in Claim 4. [Id. at ¶ 24].

### Claim 6: December 20, 2018 Refused Mail

24. Harvey filed Informal Complaint No. GCC-19-INF-00105 dated December 20, 2018 alleging that Warren had told him mail he had sent out had been returned "undeliverable" because the recipients (Assistant Attorney Generals White and Maughan) were "DEAD." [Dkt. Nos. 1-2 at 19; 47-1 at 64]. J. Jones, Mailroom Supervisor, responded on January 9, 2019 stating that the "mail in question was sent out and as of 1-9-19 has not returned." [Dkt. No. 1-2 at 19].

---

[12] In one of his responses to the motion for summary judgment, Harvey acknowledges that Coleman ordered him "to return to [his] housing unit." [Dkt. No. 66 at 73]. Harvey also argues Coleman intimidated him, but does not explain why he then filed an informal complaint and grievance after the alleged intimidation. [Dkt. No. 66 at 32].

25. Harvey submitted a regular grievance dated January 19, 2019, complaining that he had not received a response from defendant Warren to his informal complaint that Warren had illegally opened and/or refused to send out his legal mail. He further complained that Warren had told him that Assistant Attorneys General White and Maughan were both dead. [Dkt. No. 47-1 at ¶ 25; at 60].

26. The Grievance Office received and date stamped Harvey's regular grievance on January 24, 2019. Tapp rejected the grievance during intake on January 24, 2019, indicating that there was insufficient information and writing: "Answered Informal Complaint sent to you on 1/16/19." [Id. at ¶ 26; at 60].[13]

27. Harvey appealed the intake decision to the Regional Ombudsman, and the intake decision was upheld on January 31, 2019. [Id. at ¶ 27; at 60].

Claim 7: May 16, 2019, Notice of Claim[14]

A. *Informal Complaint No. GCC-19-INF-03955*

---

[13] Harvey attached a copy of Informal Complaint, No. GCC-19-00105, with a response from the mail room supervisor, to his original and amended complaints. [Dkt. Nos. 1-2 at 19; 10-1 at 18].

[14] Harvey submitted a regular grievance dated May 23, 2019, complaining that he had not received his "return receipt" for certified mail on April 26, 2019, Informal Complaint No. GCC-19-INF-03221 (dated May 2, 2019). Due to the date of the grievance it is not part of either Claim 6 or Claim 7, which both concern the mailroom. The facts regarding this informal complaint are discussed here because Harvey included it in response to Claims 6 and 7 as proof that he exhausted those claims. As evidenced from the discussion below, the informal complaint and subsequent May 23, 2019 grievance have nothing to do with Claim 6's December 20, 2018 mailroom issue or Claim 7's May 16, 2019 mailroom issue.

Harvey complained that the GRCC mailroom staff illegally tampered with his outgoing legal mail on April 26, 2019, which was addressed to Assistant Attorneys General Maughan and White, and a private attorney, Coreen Silverman. Harvey wanted the names of all S-4 mailroom staff and the supervisor working on April 26, 2019. The Grievance Office received and then date stamped the grievance on May 24, 2019. [Id. at ¶ 28; at 65]. Tapp rejected the grievance during the intake process on May 24, 2019, indicating that there was insufficient information, and directing Harvey to provide the "Answered Informal Complaint & documentation you paid for certified mail." [Id. at 66].

Harvey submitted a regular grievance dated May 24, 2019, and complained that Warren had not returned two receipts for his certified mail to him that had been sent to White and Maughan and the private attorney (Silverman), and complained that Warren had illegally tampered with and refused to mail out his legal mail. The grievance was received, and date stamped in the grievance office on May 28, 2019 and assigned log No. GCC-19-REG-00257. [Id. at ¶ 30; at 69].

28. Harvey submitted Informal Complaint No. GCC-19-INF-03955, dated May 20, 2019, complaining that Warren and the S-4 mailroom supervisor had opened, read, and refused to mail his outgoing certified legal mail on May 16, 2019 and that they illegally tampered with his legal mail. Mailroom Supervisor Jones responded on June 14, 2019, that the mailroom does not open and search outgoing legal mail without cause for suspicion as defined in operating procedure 803.1.

29. Prior to receiving the response to his Informal Complaint, Harvey submitted a regular grievance dated June 14, 2019, to the grievance office complaining that Jones (in the S-4 mailroom) had illegally opened and refused to mail his legal mail, and also refused to mail his certified legal mail with a return receipt. The grievance office received and date stamped the grievance on June 19, 2019. [Id. at ¶ 34; at 76].

30. Phillips rejected Harvey's grievance during the intake process on June 19, 2019 and noted on the back of the form that Harvey had not used the informal process to resolve his complaint, and that he needed to provide the answered informal complaint sent to him on June 14, 2019. Harvey noted on the bottom of the Informal Complaint that he had received the response from mailroom supervisor on June 19, 2019, which was the same day Phillips had received and reviewed his regular grievance. [Id. at ¶¶ 33, 35; at 78, 79].

31. Harvey resubmitted the rejected grievance with the Informal Complaint on June 24, 2019, as reflected by the June 24, 2019 date stamp on both documents. [Id. at ¶ 36; at 76-78].

---

Assistant Warden Putney provided a Level I response to Harvey's grievance on June 17, 2019, and advised him that per VDOC OP 803.1, offenders must pay for regular postage, all costs of certification, and/or all costs of return receipts of mail. An investigation of Harvey's complaint found that only one of the receipts had been received back from the postal service on May 28, 2019. GRCC's mailroom returns receipts when they are signed and received back from the postal service. Putney determined that Harvey's grievance was unfounded. [Id. at ¶ 31]. Harvey did not appeal grievance No. GCC-19-REG-00257 to the next level of appeal, Level II. He therefore did not fully exhaust the issue in this grievance. [Id. at ¶ 32; at 68]. Consequently, even if it somehow was related to Claim 6 or Claim 7, Harvey did not exhaust either claim via Grievance No. GCC-19-REG-00257.

32. Tapp reviewed the resubmitted grievance on June 24, 2019, noted there was insufficient information, and asked, "was this all 'one' piece of mail?" The grievance was sent back to Harvey and he sent it back to Tapp on June 26, 2019. Harvey had annotated the form stating "yes [illegible text] suit which was illegally intercepted." The grievance was received back on June 28, 2019 and Tapp again rejected it and returned it to Harvey stating that there were "date discrepancies" in the grievance. [Id. at ¶ 37; at 75, 77]. The informal complaint stated the matter had occurred on May 16, 2019 [Id. at 78], and the grievance stated that the matter occurred on May 23, 2019. [Id. at 76].[15]

33. Harvey did not address the date discrepancies and, instead, appealed the intake decision rejecting the grievance to the Regional Ombudsman. The appeal was date stamped July 9, 2019, but no decision was issued. Phillips does not know why no decision was made. Harvey did not exhaust the administrative remedies available to him. [Dkt. No. 47-1 at ¶ 38].[16]

B. *Informal Complaint No. GCC-19-INF-03953*

34. Harvey submitted Informal Complaint No. GCC-19-INF-03953, dated May 21, 2019, complaining that Warren and the mailroom supervisor refused to issue receipts for his certified legal mail dated May 16, 2019, and stated that mailroom staff continued to illegally open, copy, and refuse to mail his legal mail. Mailroom supervisor Jones responded on June 14, 2019, that

---

[15] One of Harvey's exhibits (the Certified Mail Receipt) establishes that the document was sent on May 23, 2019. [Dkt. No. 10-1 at 9].

[16] The document mailed on May 16, 2019 was a Notice of Claim, which, under the Virginia Tort Claims Act, is required to be filed with Attorney General of Virginia within one year of the date of the incident giving rise to the claim. Va. Code Ann. § 8.01-195.6(A). [Dkt. No. 10 at 17]. Harvey does not dispute that his Notice of Claim was date stamped received on May 28, 2019 by the Civil Litigation Section of the Attorney General's Office. [Dkt. No. 47-2 at 1]. The May 28, 2019 received date is consistent with the document being mailed on May 23, 2019. See, infra at note 34.

the mailroom does not open and search outgoing legal mail without cause for suspicion as defined in VDOC OP 803.1. [Id. at ¶ 39; at 88].

35. Harvey then submitted another regular grievance dated June 14, 2019, complaining that the issue has still not been resolved and attached GCC-19-INF-03953. In the grievance, he complained that mailroom staff opened, read, and refused to mail out his outgoing certified legal mail with a return receipt on May 16, 2019. He stated that the mail concerned a lawsuit against GRCC officials Green and Coleman for allowing his TV to be stolen. [Id. at ¶ 40; at 83].

36. The grievance office received, and date stamped the grievance, on June 19, 2019. Phillips then rejected the grievance during the intake process on June 19, 2019, because there was insufficient information. Phillips directed Harvey to provide a copy of the original Informal Complaint to the grievance office within 5 days before the grievance could be processed. [Id. at ¶ 41; at 84].

37. Harvey resubmitted the rejected grievance on June 24, 2019.  Tapp then rejected the grievance during the intake process on June 24, 2019, because it contained more than one issue. [Id. at ¶ 42; at 87].

38. Harvey submitted a regular grievance dated June 25, 2019, complaining that Warren and Jones continued to illegally open and refuse to mail his legal mail with a copy of Informal Complaint, GCC-19-INF-03953. The grievance office received, and date stamped his grievance on June 28, 2019. Tapp rejected the grievance during the intake process because the filing period had expired and specifically noted the May 16, 2019 and May 21, 2019 dates on the intake review form. The May 16, 2019 and May 21, 2019 dates were noted by Harvey in the informal complaint. Harvey did not appeal the rejected grievance to the Regional Ombudsman. [Id. at ¶ 43; at 93, 95].

17

C. *Informal Complaint No. GCC-19-INF-03952*

39. Harvey submitted another regular grievance dated June 14, 2019, concerning his complaints against Warren unlawfully tampering with his outgoing legal mail. Harvey referred to two certified mail numbers for his May 23, 2019 certified mail sent to the Attorney General's Office on May 28, 2019. [Id. at ¶ 44; at 107].

40. The grievance office received, and date stamped the grievance on June 19, 2019. Phillips then rejected the grievance during the intake process on June 19, 2019, because Harvey had not used the informal process. Phillips directed Harvey to provide the answered informal complaint (No. GCC-19-INF-03952) sent to him on June 14, 2019. [Id. at ¶ 45; at 108]. Harvey noted on the informal complaint that he had received it on June 19, 2019. [Id. at 105].

41. Harvey resubmitted the grievance with Informal Complaint GCC-19-INF-03952 attached. Tapp returned the grievance to Harvey directing him to attach the documentation that Harvey had mentioned in the grievance. Harvey returned the grievance with his trust statement reflecting posted dates for legal mail postage. On June 28, 2019, Tapp rejected the grievance and Harvey appealed the intake decision to the Regional Ombudsman. [Id. at ¶ 46; at 103-04].

42. On July 10, 2019, Regional Ombudsman Cosby returned Harvey's appeal to him because the five-day limit for review was exceeded. [Id. at ¶ 47; at 97].

43. Harvey did not exhaust the administrative remedies available to him regarding Claim 7. [Id. at ¶ 48].

### Claim 10: Pillow/Bottom Bunk

44. Harvey submitted Informal Complaint No. GCC-19-INF-04242, dated June 3, 2019, in which he complained that UM Evans, Woodbury, and Hobbs refused to provide him with a state issued pillow. Harvey stated that they were aware that he has a serious medical condition.

UM Evans responded on June 11, 2019 and advised Harvey that Housing Unit 7 was waiting to be supplied with pillows, such that no staff was able to provide a pillow to Harvey at that moment. UM Evans also wrote that staff does not have access to an inmate's medical file and that inmates can purchase a medical pillow through the medical department. Staff do not rely on an inmate's allegations as to any status without proper documentation to support an alleged medical diagnosis. [Id. at ¶ 49; at 114].

45. Harvey submitted a regular grievance dated June 11, 2019, which was received, and date stamped on June 18, 2019. Harvey stated in his grievance that UM Evans lied in her response and that both Woodbury and Hobbs could have retrieved a pillow for Harvey from another housing unit at any time. Harvey further wrote that both Woodbury and Hobbs could personally review his medical order on May 17 and 18. [Id. at ¶ 50, 112].

46. Tapp rejected Harvey's grievance during the intake review process, indicating that there was "More than one issue-resubmit with only one issue." Tapp did not assign a log number to Harvey's regular grievance and it was returned to Harvey. [Id. at ¶ 51, 113].

47. Harvey appealed the intake decision on June 19, 2019. Regional Ombudsman Woodson upheld the intake decision on June 21, 2019. [Id. at ¶ 52, 111].

48. After Harvey received the rejected grievance back from the grievance office, he did not resubmit the grievance with only one issue. Harvey therefore did not exhaust the administrative remedies available to him regarding his complaint about not being issued a pillow in Claim 10. [Id. at ¶ 53].

49. At the same time Harvey was appealing his June 11, 2019 grievance, Harvey submitted Informal Complaint No. GCC-19-INF-04352, dated June 10, 2019, alleging UM Evans was deliberately indifferent to his serious medical needs on June 6, 2019 because UM

Evans did not take the time to speak to Harvey regarding his bottom bunk pass and told Harvey

that she did not "have time for drama." [Dkt. No 1-4 at 11]. UM Evans responded that she had

talked with Harvey about several matters (Delbridge, the mailroom, Hobbs, and EG's about food

issues), but that Harvey had never mentioned a "bottom bunk issue." [Id.].

50. Harvey filed a grievance dated June 19, 2019, complaining that UM Evans had

refused to speak with him on June 6, 2019 about "multiple issues since [he had] been housed in

her housing unit." [Id. at 14]. On June 21, 2019, Tapp rejected the grievance and requested

additional information, "What has occurred due to her not speaking to you on June 6, 2019?" [Id.

at 15]. Harvey did not provide an answer and appealed his grievance to the Regional

Ombudsman. The Regional Ombudsman received Harvey's appeal on July 9, 2019 and returned

it on July 10, 2019 finding it had not been submitted within the five-day limit. [Id.].

Claim 12: June 3, 2019 Cell Search (Retaliation)

51. Harvey submitted Informal Complaint No. GCC-19-04237, which concerned a June

3, 2019 cell search that he alleges Defendant Delridge had backlogged. [Dkt. No. 10-1 at 61].

Harvey attached to the original complaint a rejected copy of grievance No. GCC-19-04237,

which complains about his pillow and the cell search on June 3, 2019. [Dkt. No. 1-3 at 5]. The

subsequent grievance was rejected at intake because the issue in the grievance was different than

the issue raised in the informal complaint. [Id. at 8]. The informal complaint had alleged that

Hobbs had harassed him in *retaliation* for filing grievances against him by searching his cell. [Id.

at 5]. The grievance alleged Hobbs had *violated VDOC policy by searching his cell without

Harvey or his cellmate present*. [Id. at 8].[17] Harvey appealed, and the intake decision was upheld

---

[17] The defendants' assertion that Harvey did not submit an informal complaint or grievance regarding Hobbs search of his cell twice on June 3, 2019 is incorrect. The defendants are correct, however, in concluding that Harvey did not exhaust his retaliation claim.

on appeal. [Id.]. Harvey, therefore, did not exhaust his allegation that Hobbs retaliated against him.

Claims 13 and 14: On June 3, 2019, Hobbs and Robinson
were Deliberately Indifferent to Harvey's Medical Needs and
Hobbs was Deliberately Indifferent to His Medical Needs
by Throwing Away his EG No. 183217 (Dead Spider). [18]

*A. Informal Complaint No. GCC-19-INF-04528 Medical Treatment (Thigpen and Shaw)*

52. Harvey alleges that on June 3, 2019 he found a dead spider in the collard greens his dinner. Harvey alleges that he filled out Emergency Grievance ("EG") No. 183217, turned it in to Hobbs, and that Hobbs threw the EG in the trash. [Id. at 127]. Harvey next alleges that he showed the spider to Capt. Baines and asked for a Common Fare tray. [Id. at 126].[19]

53. On June 4, 2019, at 9:38 a.m., Harvey submitted EG No. 183218, which stated that on June 3, 2019, at 4:45 p.m. he had become ill after unwillingly consuming collard greens that contained a large, dead, cooked spider. [Dkt. Nos. 1 at 24-25; No. 10-1 at 40]. In the EG, Harvey complained of severe vomiting, excessive migraines, diarrhea, and sharp stomach pains. [Id.]. Nurse Thigpen responded to the grievance at 10:28 a.m. and checked the box indicating that the EG did not meet the definition for an emergency and directed Harvey to submit a sick call request. [Id.]. Harvey submitted a sick call request for evaluation of his symptoms [Id. at 41-43] and was subsequently evaluated at a sick call 17 days later. [Dkt. 10 at 24]. Harvey was prescribed Motrin and Milk of Magnesia. [Dkt. No. 11 at 10].

---

[18] Harvey submitted numerous informal complaints and grievances related to the alleged incident with the spider that overlap. The facts regarding the claims will be set forth under the same heading for completeness and to negate the need for repetition.

[19] The defendants incorrectly state that Harvey "ate a dead cooked spider" on June 3, 2019. [Dkt. No. 47 at 18]. The precise language of his informal complaint is vague, "I had unwillingly consumed greens that contained a dead (cooked) large spider" [Dkt. No. 47-1 at 121], but the original verified complaint, the verified amended complaint and the related exhibits make it clear that Harvey did not eat the dead spider. To the contrary, Harvey alleges that he ate collard greens and that the dead spider had been cooked with the collard greens. As he stated in his original complaint, Harvey saw the spider and showed it to a correctional officer. [Dkt. Nos. 1 at 30; 1-4 at 28].

54. Harvey submitted Informal Complaint No. GCC-19-INF-04528, dated June 10, 2019, Harvey alleging that Nurse Thigpen was indifferent to his medical needs because she refused to provide medical care and denied his EG. Nurse Shaw[20] responded on June 21, 2019 and advised Harvey that Thigpen had deemed his EG a non-emergency and that Harvey had been seen for his complaint related to the cooked spider. Shaw noted that there was no mention of any acute distress and that Harvey's vitals were normal. [Dkt. Nos. 47-1 at ¶ 55; 1-6 at 10].

*B. Informal Complaint No. GCC-19-INF-04260 (Capt. Baines)[21]*

55. An Informal Complaint No. GCC-19-INF-04260, dated June 3, 2019, complained that both Robinson and Hobbs acted deliberately indifferent to him by serving a dinner tray that had a dead spider mixed in with the collard greens. [Dkt. No. 47-1 at 121]. UM Evans responded on June 11, 2019, the same day she responded to Informal Complaint, No. GCC-19-INF-04243, see, infra at ¶¶ 60-62. UM Evans responded that she had conducted a detailed investigation of Harvey's allegations and that no follow-up was needed because EG No. 183218 was submitted to medical and was signed off by a Lieutenant as required. [ Dkt. No. 47-1 at ¶ 72].

56.    Harvey filed a grievance on June 25, 2019 in which he stated that he had not received a response and alleged he "was seriously harmed and sickened as a direct result" of "consuming the collard greens. [Id. at 119]. On June 28, 2019, Tapp rejected the grievance during the intake process and asked for additional information: "Did you seek medical attention?

---

[20] The Court granted Nurses Shaw and Thigpen's motion to dismiss on August 17, 2021. [Dkt. Nos. 73, 74]. In dismissing the claim against Thigpen, the Court noted that Harvey had not alleged any substantial harm as a result of the delay from the date he allegedly was served the spider in his collard greens on June 3, 2019 until he was seen by medical personnel on June 20, 2019, and the medical provider that saw him prescribed Milk Of Magnesia and Motrin. [Dkt. No. 73 at 13] (citing Dkt. Nos. 1-6 at 29; 1-7 at 1 11 at 10).

[21] Although not explained in the pleadings by either party, there are two informal complaints that each have the same informal complaint number (Informal Complaint No. GCC-19-INF-04260) and both concern June 3, 2019.One complaint concerns Capt. Baines, and the other concerns Robinson and Hobbs.

Why did you consume it if you saw it had 8 legs?" [Id.].[22] Harvey appealed, and his appeal was stamped received on July 18, 2019. [Id. at 117]. Cosby rejected the appeal on July 19, 2019 because it had not been filed within five days. [Id. at ¶¶ 62-63; at 118].

57. Harvey filed a second informal complaint, dated June 4, 2019, but used the same number (Informal Complaint No. GCC-19-INF-04260), alleging that Capt. Baines had not provided him with a Common Fare tray after Harvey had shown him the spider and asked for a Common Fare tray. [Id. at 126]. On July 2, 2019, Tapp rejected the grievance during the intake process and directed Harvey to provide additional information — was Harvey on a "Common Fare diet on June 3, 2019?" [Id. at ¶¶ 57, 64; at 125]. Harvey did not provide an answer within the allotted five days and instead appealed. Harvey's appeal was stamped received on July 10, 2019 and Cosby upheld the intake decision on July 11, 2019. [Id. at ¶ 64; at 122, 123].[23]

*C. Informal Complaint No. GCC-19-INF-04243 (Hobbs)*

58. Harvey filed an informal complaint dated June 6, 2019, alleging that Hobbs verbally abused and harassed him regarding EG No. 183218. Harvey had submitted EG No. 183218, dated June 4, 2019, but did not note the time it was submitted. In the EG, Harvey stated that it was the second emergency grievance he had had written because Hobbs had thrown EG No. 183217 in the trash on June 3, 2019, at 4:45 p.m., when Harvey gave it to him. Harvey complained that he had unwillingly consumed collard greens that contained a dead spider and

---

[22] In the June 4, 2019 EG, Harvey indicated that he had "consumed" the collard greens, which he alleged had made him sick. [Dkt. No. 10-1 at 40]. In Informal Complaint Nos. GCC-19-INF-04239 and -04528, Harvey repeated that he "unwillingly" consumed the collard greens. [Id. at 64, 68]. Harvey stated in his June 3 and 10, 2019 requests for medical treatment that he had "unwillingly" consumed the collard greens. [Id. at 41, 42]. Harvey stated in Informal Complaint No. GCC-19-INF-04260, however, that he had shown the spider to Baines on June 3, 2019. [Dkt. No. 47-1 at 124]. Consuming the collard greens even though the spider was visible likely prompted Tapp's question. Harvey clarifies in his June 7, 2021 response that he did not see the spider when he first started eating the collard greens and that he stopped eating when he saw the spider. [Dkt. No. 55 at 60].

[23] As noted, Harvey requested to be placed on the Common Fare diet on June 3, 2019 and June 21, 2019 [Dkt. No. 66 at 123-24], and he was approved for the Common Fare diet on June 24, 2019. [Id. at 125-26].

was sick as a result. He complained of excessive migraines, diarrhea and stomach pains and asserted that he needed medical attention. [Dkt. No. 47-1 at ¶ 67].

59. UM Evans responded to Harvey's Informal Complaint No. GCC-19-INF-04243 on June 11, 2019 and advised Harvey that EG No. 183218 was covered in Informal Complaint GCC-19-INF-04260. UM Evans wrote that Hobbs had stated that Harvey approached him in the dining hall and verbally stated to him, "You're a damn liar, you didn't do s**t with my grievance." Hobbs stated that he remained calm and was advised to charge Harvey if he verbally threatened him again regarding any issue. [Id. at ¶ 70; at 128].

60. On June 11, 2019, Harvey filed a grievance and complained about Hobbs throwing away his EG on June 3, 2019, and also that Hobbs had lied about what he had done with it. Harvey also complained about UM Evans investigation of his complaint, which Harvey called a "cover up." Harvey wanted Hobbs fired and UM Evans demoted or fired for covering up for Hobbs. [Id. at 129]. On June 18, 2019, Tapp rejected the grievance during the intake process because Harvey had raised more than one issue. Harvey appealed and on June 21, 2019, Cosby upheld the intake decision. [Id. at ¶¶ 74-73; at 130].[24]

61. Harvey did not exhaust the administrative remedies available to him regarding the allegations in Claim 14. (Id. at ¶ 75].

*D. Informal Complaint No. GCC-19-INF-04785 (Shaw)*

62. Harvey submitted Informal Complaint No. GCC-19-INF-004785, dated June 28, 2019, complaining that Nurse Shaw had "lied" on June 27, 2019, in her response referencing his

---

[24] Harvey references Regular Grievance No. GCC-19-REG-00316 in his response, which he alleges establishes that he exhausted his claim against Hobbs. [Dkt. 55 at 23-24]. Harvey attached the Level I and II response to that grievance to his original complaint, but the issue grieved there was Hobbs use of vulgar language when he addressed Harvey on June 6, 2019. [Dkt. No. 1-7 at 9-14]. That grievance, No. GCC-19-REG-00316, is not related to either Claim 13 or 14.

medical care after the spider incident. Harvey noted he had been prescribed both pain medication and milk of magnesia. Nurse Shaw responded on July 1, 2019, that according to the documentation, there was no mention of acute distress on the day he was seen (June 20, 2019). [Dkt. Nos. 1-6 at 29; 47-1 at ¶ 59].[25]

63. Harvey submitted another regular grievance dated July 3, 2019, complaining that his "issue" with the spider incident was not resolved, and that he requested answers to Nurse Shaw's "fraudulent statements." [Dkt. No. 1-7 at 1]. The grievance office received and date stamped Harvey's grievance on July 9, 2019. On July 9, 2019, Tapp rejected the grievance during the intake process due to insufficient information and directed Harvey to provide Shaw's response. Tapp did not assign a log number to the grievance and returned it to Harvey. [Dkt. Nos. 47-1 at ¶ 60; 1-7 at 1-2].

64. Harvey appealed the intake decision to the Regional Ombudsman. Cosby responded to his appeal on July 29, 2019 and returned the intake appeal to him because the five-day time limit for review was exceeded. [Dkt. Nos. 47-1 at ¶ 61; 1-7 at 2].

Claim 16: In June 2019, Delbridge Intentionally
Delayed Logging in Several of Harvey's Informal Complaints

65. Harvey alleges that Delbridge delayed logging in five informal complaints related to his medical care in June 2019:

- Informal Complaint No. GCC-19-INF-04132 which is dated May 30, 2019 and indicated it was received on June 5, 2019, an alleged delay of six days. The complaint concerns Nurse Ellis and Harvey's need for medications left behind when Harvey was moved [Dkt. No. 10-1 at 59];

---

[25] Harvey attached three "Offender Requests" to his July 14, 2021 response to the motion for summary judgment. The request dated June 3, 2019 stated Harvey became "seriously sickened by unwillingly consuming collard greens with a dead spider;" the request dated June 10, 2019 contained a similar statement; and the June 19, 2019 request stated that Harvey was being "denied medical care." [Dkt. No. 66 at 169-71]. When seen on June 20, 2019, Harvey's complaints related to the June 3, 2019 incident with the spider in the collard greens were treated with Motrin and Milk of Magnesia. [Id. at 172].

- Informal Complaint No. GCC-19-INF-04239 which is dated June 4, 2019 and indicated it was received on June 10, 2019, an alleged delay of six days. The complaint concerns Hobbs' handling of EG No. 183218 [Id. at 64];

- Informal Complaint No. GCC-19-INF-04242 which is dated June 3, 2019 and indicated it was received on June 10, 2019, an alleged delay of seven days. The complaint concerns UM Evan's, Hobbs', and Sgt. Woodbury's alleged refusal to issue Harvey a pillow from May 17, 2019 through May 20, 2019 [Id. at 60];

- Informal Complaint No. GCC-19-INF-04243 which is dated June 6, 2019 and indicated it was received on June 10, 2019, an alleged delay of four days. The complaint concerns UM Evans's alleged verbal abuse of Harvey on June 6, 2019. [Id. at 66]; and

- Informal Complaint No. GCC-19-INF-04528, which is dated June 10, 2019 and indicated it was received on June 18, 2019, an alleged delay of eight days. The complaint concerns Nurse Thigpen's response to Harveys EG No. 183218. [Id. at 68].

[Dkt. No. 10 at 25].

66. Harvey submitted Informal Complaint No. GCC-19-INF-04313, dated June 10, 2019, complaining that Delbridge was refusing to log in Harvey's Informal Complaints. UM Evans responded on June 11, 2019, that she had discussed the matter with Harvey on June 6, 2019. Evans also indicated that Harvey had verbally threatened Delbridge and Evans advised Harvey that threatening staff will result in disciplinary action. [Dkt. No. 47-1 at ¶ 76; at 139].

67. Harvey then submitted a regular grievance dated June 19, 2019, complaining that Harvey had been informed that Delbridge was refusing to log-in Harvey's informal complaints. The grievance was received and date stamped on June 21, 2019. Phillips rejected the grievance during the intake process on June 21, 2019, because there was insufficient information. Phillips directed Harvey to provide the grievance office with the name of the person who had informed Harvey that Delbridge was refusing to log Harvey's informal complaints. Phillips did not assign a log number to the grievance and returned it to Harvey. [Id. at¶ 77; at 138].

68. Harvey appealed the intake decision to the Regional Ombudsman. Cosby upheld the intake decision on July 1, 2019. [Id. at 78; at 136].

69. Harvey submitted another regular grievance dated June 11, 2019, complaining that UM Evans gave orders to Delbridge to hold Harvey's informal complaints. Harvey requested an independent investigation into both UM Evans and Delbridge. The grievance office received and then date stamped the grievance on June 18, 2019. On June 21, 2019, Tapp rejected the grievance during intake review because the grievance contained more than one issue. Tapp did not assign a log number to the grievance and returned the grievance to Harvey. Harvey did not appeal the intake decision. [Id. at ¶ 79; at 141].

70. Harvey then submitted a regular grievance dated July 3, 2019, complaining that Tapp illegally rejected 20 of his appealed Informal Complaints and that she had intentionally interfered with the grievance process.[26] The grievance office received and date stamped the grievance on July 9, 2019. Tapp rejected the grievance during the intake process on July 9, 2019, because intake decisions are appealable and not grievable. [Id. at 34] (citing then VDOC OP 866.1 VI(B)(5) ("If an offender wishes a review of the intake decision on any grievance, they may send the Regular Grievance form within five calendar days of receipt to the appropriate Regional Ombudsman for a determination (address will be posted on the housing unit bulletin board). There is no further review or appeal of intake decisions."). Tapp did not assign a log number to the grievance and returned the grievance to Harvey. [Id. at ¶ 80; at 144].

71. Harvey appealed the intake decision to the Regional Ombudsman. Cosby upheld the intake decision on July 17, 2019. [Id. at ¶ 81; at 144].

72. Harvey submitted Informal Complaint No. GCC-19-INF-04713, dated June 24, 2019, complaining that Phillips had illegally held Harvey's Level I responses for five additional days

---

[26] The grievance was preceded by an Informal Complaint No. GCC-19-INF-04712, dated June 20, 2019 and responded to on June 27, 2019, advising Harvey if he disagreed with an intake decision he "should appeal to the Regional Ombudsman in accordance with O.P. 866.1." [Id. at 148].

knowing that he only has five days to appeal. Tapp responded on June 27, 2019, and advised Harvey that per policy, he has five calendar days from the date he *"received"* the grievance to appeal. [Id. at ¶ 83; at 152].

73. Harvey submitted a regular grievance on July 3, 2019, complaining that Phillips illegally held on to his Level I responses for five additional days, knowing that he only had five days to appeal. The grievance office received, and date stamped the grievance on July 9, 2019. Tapp rejected the grievance during the intake process because Harvey had not provided the Level I responses he had mentioned in his grievance. Tapp did not assign a log number to it and returned it to Harvey. [Id. at ¶ 82; and 150].

74. Harvey submitted Informal Complaint No. GCC-19-INF-04869, dated July 1, 2019, complaining that Tapp and Phillips illegally withheld his Level I responses dated June 25, 2019, for five additional days knowing that he only has five days to appeal. Phillips responded on July 8, 2019 informing Harvey that the Level I response had been received on July 8, 2019, and that he would receive a Level II response form the Regional Ombudsman. [Id. at ¶ 83; at 158].

75. Harvey submitted a regular grievance on July 11, 2019, complaining that Tapp and Phillips had illegally held on to the June 25, 2019 Level I responses he received on July 1, 2019 for five additional days, knowing that he only had five days to appeal. The grievance office received, and date stamped the grievance on July 16, 2019. Tapp rejected the grievance during the intake process because Harvey had not provided "proof" that Harvey was "not allowed to appeal the grievances mentioned." [Id. at 157].

76. Harvey submitted Informal Complaint No. GCC-19-INF-04752 alleging that Tapp and Phillips had withheld Level I responses he received on June 26, 2019. Tapp responded and

informed Harvey that the responses were not withheld and that once a response is signed it is sent to Harvey in accordance with policy." [Id. at 155].

77. Harvey submitted a regular grievance on July 17, 2019, complaining that Tapp and Phillips had illegally held on to a June 21, 2019 Level I response he received on June 26, 2019 for five additional days, knowing that he only had five days to appeal. The grievance office received, and date stamped the grievance on July 19, 2019. Tapp rejected the grievance during the intake process because Harvey had not provided the "grievance in question." [Id. at 154].

78. Harvey submitted Informal Complaint No. GCC-19-INF-06949, complaining that Warren and Jones, in the mailroom, had not returned his Level II response for regular grievance No. GCC-REG-00257, in which Harvey had alleged he had not been given two certified mail receipts. [Id. at 168]. Harvey did not receive a response and filed a regular grievance dated October 3, 2019, complaining that Warren and Jones had refused to return his responses from the Regional Ombudsman, and he wanted Warren and Jones removed from the mailroom. The grievance office received, and date stamped the grievance on October 7, 2019. Phillips did not accept the grievance during intake on October 7, 2019, because Harvey had not provided proof of payment of the legal mail mentioned. [Id. at 167]. Harvey resubmitted the grievance on October 11, 2019 [Id. at 162], and Phillips rejected it on October 11, 2019, because the filing period had expired —Harvey's receipts referenced April 22, 2019 payment dates. Harvey did not appeal the intake decision to the Regional Ombudsman. [Id. at ¶ 85; at 163, 165].

Claim 17: In June 2019, Herrick and Cosby
interfered with Harvey's access to the inmate grievance procedure.

79. Harvey alleges that on July 15, 2019, Herrick, the Director of Health Services date stamped "medical grievances" (Nos. GCC-19-INF-04260, GCC-19-INF 04516, and GCC-INF-04528) and rerouted them to Cosby, Regional Ombudsman, who date stamped them received on

29

July 18, 2019. Harvey alleges that Cosby then determined the five-day limit "time limit for review ha[d] been exceeded." [Dkt. No. 10 at 26].

80. Informal Complaint No. GCC-19-INF-04260, dated June 3, 2019, complained that both Robinson and Hobbs acted deliberately indifferent to Harvey being served a dinner tray that had a spider in the collard greens. [Dkt. No. 47-1 at 121]. On June 28, 2019, Tapp rejected the grievance during the intake process and asked for additional information: "Did you seek medical attention? Why did you consume it if say it had eight legs?" [Id.]. Harvey appealed, and his appeal was stamped received on July 18, 2019. [Id. at 117]. Cosby rejected the appeal on July 19, 2019 because it had not been filed within five days. [Id. at ¶¶ 62-63; at 118].

81. Informal Complaint No. GCC-19-INF-04516, dated June 5, 2019, complained that Nurse Bonner acted deliberately indifferent to him by refusing to respond to Harvey's medical emergency, EG No. 191163.[27] Nurse Shaw responded on June 21, 2019. [Dkt. No. 1-6-15]. On June 27, 2019, Harvey filed a grievance complaining about Bonner's deliberate indifference to his EG, and also that Bonner had not issued him his medications. [Id. at 16]. On July 2, 2019, Tapp rejected the grievance during the intake process because Harvey had raised more than one issue and directed him to "resubmit with only one issue." [Id.]. Harvey appealed, and his appeal was stamped received on July 18, 2019. [Dkt. Nos. 1-6-16; 47-1 at 117]. Cosby rejected the

---

[27] EG No. 191163, dated May 21, 2019 at 7:55 a.m., stated that on May 17, 2019, Coleman and UM Green had moved Harvey from one housing unit to another, but did not notify the medical department in Harvey's prior housing unit to transfer Harvey's medical file and medications to the medical department in his new housing unit. [Dkt. Nos. 10 at 21; 10-1 at 28]. Harvey further indicated in the grievance that he had been without any of his chronic care medications for four days (May 18-21, 2019), and that as a result he had severe chest pains, migraines and withdrawal pains in his back, arms, and legs. Id. Nurse Bonner responded to the EG stating that Harvey's previous housing unit had been contacted and the remainder of his medications would be sent to his current location. [Id.]. Nurse Bonner's response was dated May 21, 2019 at 12:55 p.m. Harvey alleges that he did not receive the response until June 5, 2019, but does not allege that he was denied the medications after May 21, 2019. [Dkt. No. 10-1 at 28].

appeal on July 19, 2019 because it had not been filed within five days. [Dkt. Nos. 1-6at 17; 47-1 at ¶¶ 62-63; at 118].

82. Informal Complaint No. GCC-19-INF-04528, dated June 10, 2019, Harvey alleged that Nurse Thigpen was indifferent to his medical needs because she had refused to provide medical care and denied his EG regarding the dead cooked spider he alleges was in his food. Nurse Shaw responded on June 21, 2019 and advised Harvey that Thigpen had deemed his EG a non-emergency; and that he had been seen for his complaint related to the cooked spider. Shaw noted that there was no mention of any acute distress and his vitals were normal. [Dkt. Nos. 47-1 at ¶ 55; 1-6 at 10]. On July 28, 2019, Tapp rejected the grievance during the intake process, asked for additional information, and directed Harvey to provide a copy of the "Answered Emergency Grievance." [Dkt. No. 1-6 at 12]. Harvey appealed, and his appeal was stamped received on July 18, 2019. [Id. at 11]. Cosby rejected the appeal on July 19, 2019 because it was not been filed within five days. [Id. at 12].

## II. Standards of Review

The defendants seek: (i) summary judgment, pursuant to Rule 56, on the affirmative defense that Harvey failed to exhaust several of his claims, and, (ii) dismissal of several claims pursuant to Rule 12(b)(6), asserting that Harvey also failed to state a claim upon which relief can be granted.

### A. Motion to Dismiss

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). To survive a Rule 12(b)(6) motion to dismiss, the non-moving party's complaint must allege facts that "state a claim to relief that is plausible on its face." Bell. Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). A claim is plausible where

31

the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and where there is "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). But "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557).

Although a court should assume the veracity of well-pleaded factual allegations, conclusory statements are not sufficient. Id. at 663-64. A plaintiff's allegations must "raise a right to relief above the speculative level," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id. Moreover, a plaintiff's proffer of bare legal conclusions – without any supporting facts – fails to satisfy this standard. SD3, LLC v. Black & Decker, 801 F.3d 412, 423 (4th Cir. 2015); see also Iqbal, 556 U.S. at 678.

### B. Motion for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that summary is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material and materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

32

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

A non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.C. 1994); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements....").[28] Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

---

[28] "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)). Affidavits must "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters stated." Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011). Additionally, "summary judgment affidavits cannot be conclusory ... or based upon hearsay." Evans, 80 F.3d at 962.

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not available via the grievance process, such as monetary damages. Porter, 534 U.S. at 524. To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. Woodford, 548 U.S. at 89–90.

The PLRA also requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions. Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added);[29] see Graham v. Gentry, 413 F. App'x 660, 662-663 (4th Cir. 2011) (the PLRA

---

[29] Ross held that courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement" and that "[t]he only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. at 1862. Several of the unexhausted claims herein are the result of Harvey's failure to follow straightforward procedures. Here, the three exceptions in Ross do not apply. Id. at 1859-60. First, the grievance process was available to Harvey, and he made frequent use of it. Second, the grievance procedure is straightforward. On the top of each grievance form there are instructions:

> You are required per Operating Procedure 866.1 Offender Grievance Procedures to attempt to resolve your complaint in good faith prior to filing a regular grievance. You must submit your grievance within 30 days from the date of the occurrence or discovery of the incident. Only one

requires an inmate to exhaust any "available" administrative remedies before pursuing a § 1983 action in federal court). The requirement that a prisoner exhaust before filing "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Porter, 534 U.S. at 519; see also Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015) ("[t]he PLRA requires 'proper exhaustion' that complies with the 'critical procedural rules' governing the grievance process.") (quoting Woodford, 548 U.S. at 95).

Once a defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to the plaintiff.[30] See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D. Md. 2016) (citing Graham v. Gentry, 413 F.

---

issue per grievance will be addressed. Write your grievance only in the space provided on the grievance form, preferably in ink. Regular grievances are submitted through the institutional mail to the Warden/Superintendent's office and a receipt will be issued within 2 working days from received date if the grievance is not returned during intake.

See, e.g., Dkt. No. 1-2 at 8 (June 18, 2018 grievance). The form also informed Harvey that if he was dissatisfied with the intake decision, he had five calendar days from the receipt of the intake decision "to submit to the Regional Ombudsman for a review of the intake decision" and that "[t]he Regional Ombudsman's decision is final." Id. See Hicks v. Adams, 692 F. Appx. 647, 648 (2d Cir. 2017) (upholding district court's finding inmate failed to exhaust because the there was no ambiguity regarding what steps inmate needed to take to file a proper appeal).

Lastly, there is no evidence that the VDOC personnel prevented Harvey from using the grievance procedure or from filing an appeal with regard to the claims he has raised in this civil action. See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances.").

[30] See Wall v. Stevens, No. 7:16cv373, 2019 U.S. Dist. LEXIS 51159, *12 (W.D. Va. Mar. 26, 2019), aff'd, 775 F. App'x 761 (4th Cir. 2019) (inmates "appeal of the intake decision did not exhaust his retaliation claim, because he had another available administrative remedy—refiling the deficient regular grievance."); Jackson v. Barksdale, No. 7:17cv31, 2017 U.S. Dist. LEXIS 126723, *19 (W.D. Va. Aug. 10, 2017) (recognizing a regular grievance's rejection at intake, even if appealed, does not constitute exhaustion, and to qualify as such, it must be resubmitted, accepted, and appealed to the highest level), aff'd, 707 F. App'x 786 (4th Cir. 2018); see, e.g., Person v. Davis, No. 7:20cv146, 2021 U.S. Dist. LEXIS 184434, *10-11 (W.D. Va. Sept. 27, 2021) ("to satisfy the exhaustion requirement, an inmate must correct and resubmit the grievance, have it accepted, and then appeal it to the highest available level of review without satisfactory resolution of the issue"); Huffman v. McCarthy, No. 7:17cv00032, 2017 U.S. Dist. LEXIS 160462, *35 (W.D. Va. Sept. 29, 2017) (VDOC OP 866.1 "requires that an inmate appeal a decision on the merits of his grievance to the highest available level before he has exhausted his administrative remedies" and "that if an inmate's grievance is rejected at intake, he must resubmit the issue to exhaust his administrative remedies.").

App'x 660, 663 (4th Cir. 2011)). "'A litigant's failure to raise issues during an administrative

appeal can constitute a failure to exhaust administrative remedies.'" Kikumura v. Osagie, 461

F.3d 1269, 1282 (10th Cir. 2006) (quoting Kikumura v. Hurley, 242 F.3d 950, 956 (10th Cir.

2001)); see also Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("to be 'available' a

remedy must be 'capable of use for the accomplishment of [its] purpose.'"); see, e.g., Smith v.

Vidonish, 210 F. App'x 152, 157 (3d Cir. 2006) (finding failure to comply with prison grievance

procedure to resubmit the grievance does not make grievance procedure unavailable to inmate

where inmate was instructed that he could submit an edited grievance). A prisoner cannot

exhaust his administrative remedies by "spurning" the established rules:

> unless the prisoner completes the administrative process by following the rules
> the state has established for that process, exhaustion has not occurred. Any other
> approach would allow a prisoner to "exhaust" state remedies by spurning them,
> which would defeat the statutory objective of requiring the prisoner to give the
> prison administration an opportunity to fix the problem--or to reduce the damages
> and perhaps to shed light on factual disputes that may arise in litigation even if the
> prison's solution does not fully satisfy the prisoner.

Pozo v. McCaughtry, 286 F.3d 1022, 1023-24 (7th Cir. 2002)) (citations omitted).[31]

   A. *Claims 1, 3, 4, 6, 7, 10, 12, 13, 14, 16, and 17*[32]

---

[31] As is evident from the several hundred pages of informal complaints, grievances, emergency grievances and
related documents, Harvey has considerable experience with the VDOC's grievance system. Further he was able to
resubmit grievances, in some cases more than once as part of the grievance intake process. "[T]he policy does not
limit the number of attempts to correctly file a regular grievance that would be accepted at intake." Woodhouse v.
Duncan, No. 7:17cv129, 2018 U.S. Dist. LEXIS 50532, *5 (W.D. Va. March 27, 2018), aff'd, 741 F. App'x 177
(4th Cir. 2018).

[32] Harvey states in one of his responses that Director Clarke admitted that the defendants did not process his
grievances properly. [Dkt. Nos. 54 at 5; 55 at 8-9, 63]. His point relies on a paragraph in a July 3, 2019 letter from
the Director's Office that found no evidence that Harvey had properly grieved at the institutional level and that
VDOC policy did not provide for review of issues at the Director's level "that are not properly processed at the Unit
Level and/or the Regional Level." [Dkt. No. 5-1 at 56]. The statement is not an admission that anything was not
done properly by any VDOC official. To the contrary, the letter indicates that Harvey needed to follow the
procedures set forth in VDOC OP 866.1. [Id.]. A similar letter dated June 19, 2019 is also attached to Harvey's
response. [Id. at 54].

Regarding Claim 1, during intake, Harvey was required to supply information supporting his allegation that he needed a change in his diet. The medical records that Harvey submitted did not support Harvey's claim of deliberate indifference, much less that he was in any way required to receive a diet different from other inmates. As noted, Harvey did not receive approval for his requested Common Fare diet until *after* the time period listed in Claim 1, June 24, 2019. [Dkt. No. 66 at 123-24]. Harvey asserts he was prevented from completing the grievance process by Delbridge, Herrick, and Cosby. [Dkt. No. 66 at 51-52]. His assertion is conclusory, and it is evident from the record that no determination had been made that Harvey should be provided a different diet until June 24, 2019.

Harvey also argues (in the same pleading) that he properly appealed the intake decision to Herrick in the Office of Health Services, and that Herrick's illegally "rerouted" his appeal to Cosby and prevented him from exhausting his grievance. [Dkt. 66 at 31]. Harvey ignores the clear language of VDOC OP 866.1, which states that he can only appeal an intake decision to the Regional Ombudsman (Cosby) and that rule is reiterated in the language on the grievance form as well. See, supra at notes 7, 9, 28-30; see also Wall, 2019 U.S. Dist. LEXIS 51159, *12 (appealing the "intake decision," does not exhaust the claim in the grievance if the inmate had "another available administrative remedy—refiling the deficient regular grievance"). Harvey's assertion that he was prevented from exhausting his claim is refuted by the record. Claim 1 was not exhausted and defendants' motion for summary judgment must be granted with respect to Claim 1.

Claim 3 alleges defendants Coleman, Barnes, and Green retaliated against Harvey on July 3, 2018 by searching his cell because Harvey had filed grievances against them. The grievance related to this claim was rejected during intake because it contained more than one issue and

Harvey never resubmitted the matter, and he therefore failed to exhaust Claim 3. Accordingly, defendants' motion for summary judgment will be granted with respect to Claim 3.

Claim 4 alleges defendants Coleman, Barnes, and Green retaliated against Harvey on July 6, 2018 by searching his cell because Harvey had filed grievances against them. The grievance related to Claim 4 was rejected during intake because it contained vulgar language. Harvey neither appealed that decision nor resubmitted a grievance without vulgar language. Accordingly, Harvey has failed to exhaust Claim 4 and summary judgment will be granted with respect to that claim.

Claim 6 alleges that on December 20, 2018, Warren interfered with Harvey's access to the courts by opening Harvey's outgoing legal mail and by telling Harvey that two of the Assistant Attorney Generals handling Harvey's case were dead. The grievance related to this claim was rejected during intake because of insufficient information. Harvey was directed to provide a copy of the related informal complaint but, instead of submitting a copy of the informal complaint, Harvey appealed to the Regional Ombudsman.[33] The Regional Ombudsman upheld intake decision on appeal. As courts have recognized, appealing an "intake decision," does not exhaust the claim in the grievance because Harvey had "another available administrative remedy—refiling the deficient regular grievance." Wall, 2019 U.S. Dist. LEXIS 51159, *12; see also Woodford, 548 U.S. at 90-91 ("[P]roper exhaustion demands compliance with an agency's deadlines and *other critical procedural rules* because no adjudicative system

---

[33] Harvey did not contest that he failed to provide the requested information. Harvey's grievance stated he had not received a response to the informal complaint, but a request for additional information is not limited by an untimely response. An untimely response simply allows an inmate to file a grievance without waiting for the response to the informal complaint. Even an untimely response may have relevant information that the intake officer could use in an attempt to resolve the dispute, which would further the statutory purpose of the PLRA. Pozo, 286 F.3d at 1023-24 (requiring inmates to exhaust furthers the PLRA's objective is give the prison administrators "an opportunity to fix the problem--or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner.").

can function effectively without imposing some orderly structure on the course of its proceeding." (emphasis added)); <u>supra</u> at 35-36, notes 29-30.[34] Accordingly, Harvey has failed to exhaust Claim 6 and summary judgment will be granted with respect to that claim.

In Claim 7, Harvey alleges that defendants Warren, Jones, and Ray denied Harvey access to the courts on May 16, 2019 because they opened his outgoing mail and refused to deliver his Notice of Claim. During intake, after Harvey had submitted additional information, a date discrepancy was noted. [Dkt. No. 47-1 at ¶ 37; at 75, 77]. The informal complaint stated the matter had occurred on May 16, 2019 [<u>Id.</u> at 78], by contrast the grievance stated that the matter occurred on May 23, 2019. [<u>Id.</u> at 76]. Instead of correcting the discrepancy, Harvey appealed it to the Regional Ombudsman.[35] The Ombudsman did not rule on the matter. Nevertheless, the matter is unexhausted because Harvey never filed a grievance related to the matter that allegedly occurred on May 16, 2019 and did not take advantage of resubmitting a corrected grievance

---

[34] Harvey clearly knew he could resubmit a grievance because he did so, twice, with respect to GCC-19-INF-03955. <u>See, supra</u> at 14-15. Further, Harvey's June 7, 2021 response indicates the mail at issue in this claim involved obtaining an address for service of a defendant (Dr. Arakaky) [Dkt. No. 55 at 43-47], in a case filed in the Western District. <u>Harvey v. Russell</u>, No. 7:18cv97 (W.D. Va.). The docket of that district court indicates Harvey sought a stay on August 30, 2018 to obtain addresses for service of three defendants, including Arakaky. Dkt. No. 64. The Western District granted Harvey a thirty-day extension on January 3, 2019 to obtain the address. The Orders of the Western District indicate that Harvey, who was not proceeding <u>in forma pauperis</u> in that action, was allowed discovery with regard to the address for service, but the responses indicated that Arakay was not a VDOC employee, did not work as a regular employee of the medical provider for the institution, and was a "'locum tenens physician [meaning one who temporarily filled the place of another] who provided care and treatment to prisoner-patients; at Augusta Correctional Center during [another doctor's] leave of absence." Dkt. No. 296 at 2. The order dismissing Arakay was not entered until August 12, 2020, which recounts numerous continuances to Harvey to allow him to perfect service. Dkt. No. 321. Harvey could not have suffered any prejudice. <u>See Evans v. Chalmers</u>, 703 F.3d 636, 647 (4th Cir. 2012) ("[C]onstitutional torts ... require a demonstration of both but-for and proximate causation" and "intervening acts of other[s]" may "insulate" a defendant from liability).

[35] Harvey argues in response that Cosby failed "to issue [him] a remedy." [Dkt. No. 66 at 36]. Harvey, however, had a remedy — resubmitting the grievance and eliminating the discrepancy — but Harvey did not pursue the remedy. Claim 7 involves a matter that allegedly occurred on May 16, 2019 and the grievance submitted, involved a matter that allegedly occurred on May 23, 2019.

reconciling the discrepancy. Accordingly, Harvey has failed to exhaust Claim 7 and summary judgment will be granted with respect to that claim.[36]

Claim 10 alleges defendants Hobbs and Woodbury violated Harvey's Eighth Amendment rights because they did not issue Harvey a pillow when he was transferred on May 17-18, 2019; and also, that defendants failed to "secure" Harvey a "bottom bunk per doctor's orders." [Dkt. No. 10 at 20]. With respect to the issuance of a pillow, Harvey's grievance was rejected because it contained more than one issue. Harvey did not resubmit his grievance limiting the grievance to a single issue. Instead, Harvey appealed the intake decision and the intake decision was upheld. As to the bottom bunk issue, Harvey again submitted a grievance that was inconsistent with the informal complaint. The informal complaint was limited to the issue of a bottom bunk assignment. The grievance did not mention the bottom bunk issue at all. When asked for additional information, instead of clarifying the matter by providing the additional information, Harvey appealed, and the Regional Ombudsman upheld the intake decision. Harvey therefore failed to exhaust the issues in Claim 10. Accordingly, summary judgment will be granted with respect to Claim 10.

Claim 12 alleges that defendant Hobbs retaliated against Harvey by searching Harvey's cell (twice) on June 3, 2019 because Harvey had filed grievances against Hobbs. Harvey

---

[36] The Notice of Claim document Harvey sought to mail on May 16, 2019 was required to be filed with Attorney General of Virginia within one year of the date of the incident giving rise to the claim. Va. Code Ann. § 8.01-195.6(A). [Dkt. No. 10 at 17]. Harvey has not disputed the copy of his Notice of Claim date stamped received on May 28, 2019 by the Civil Litigation Section of the Attorney General's Office. [Dkt. No. 47-2 at 1]. The May 28, 2019 date is consistent with the document being mailed on May 23, 2019. See, supra at note 15. Consequently, Harvey has suffered no prejudice with respect to his claim that the alleged refusal to mail his certified mail on May 16, 2019 because the item was mailed and arrived within the time period required by the statute. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) "A prisoner must also identify an actual injury resulting from official conduct." (citing Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993)); see, e.g., Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir.1997) (affirming district court's granting summary judgment on an access to the courts claim involving allegations that corrections officers opened outgoing legal mail because the prisoner suffered no actual injury as a result of the alleged interference with his legal mail).

submitted Informal Complaint No. GCC-19-04237, dated June 3, 2019, which alleges that Hobbs searched his cell (twice) on June 3, 2019 in retaliation for Harvey filing grievances against him. [Dkt. No. 1-3 at 5]. The subsequent grievance was rejected at intake on June 18, 2019 because the issue in the grievance was different than the issue raised in the informal complaint — the grievance did not mention retaliation and instead alleged Hobbs had violated VDOC policy by searching his cell without Harvey or his cellmate present. [Id. at 8]. Harvey appealed, and the intake decision was upheld on appeal on June 21, 2019. [Id.]. Harvey therefore failed to exhaust the issues in Claim 12. Accordingly, summary judgment will be granted with respect to Claim 12.

In Claim 13, Harvey alleges that Hobbs was deliberately indifferent to Harvey's serious medical needs when Hobbs allegedly threw away an EG on June 3, 2019 which he alleges Hobbs did in retaliation for Harvey filing grievances against Hobbs. Similarly, in Claim 14, Harvey alleged that Hobbs was deliberately indifferent to Harvey's serious medical needs as evidenced by Hobbs throwing away his EG in which Harvey sought medical care. Harvey references GCC-19-INF-04260 as evidence he exhausted these claims. During intake on his grievance (dated June 25, 2019), GCC-19-INF-04260, Harvey was asked for additional information. In rejecting the grievance on June 28, 2019, Tapp asked Harvey if Harvey had sought medical attention and why Harvey had consumed "it" if he had seen the spider. [Dkt. No. 47-1 at 118]. Harvey did not supply the additional information and instead appealed. Cosby rejected the appeal because it had not been filed within the five-day time limit. Harvey also cites to regular grievance No. GCC-19-REG-00316 as evidence he exhausted Claim 14. [Dkt. No. 66 at 83]. He attached the Level I and II response to that grievance to his original complaint, but the issue grieved was Hobbs use of vulgar language when he addressed Harvey on June 6, 2019. [Dkt. No. 1-7 at 9-14]. Grievance

No. GCC-19-REG-00316 is not related to either Claim 13 or 14. Harvey therefore failed to exhaust the issues raised in either Claim 13 or Claim 14. Accordingly, summary judgment will be granted with respect to those claims.

In Claim 16, Harvey alleges that defendant Delbridge was deliberately indifferent to Harvey's serious medical needs during June 2019 because Delbridge allegedly backlogged five informal complaints.[37] In GCC-19-INF-04313, dated June 10, 2019, Harvey complained that UM Evans had personal knowledge that Delbridge had "refused to log-in [ANY] of [Harvey's] informal complaints." [Dkt. No. 47-1 at 139]. On June 11, 2019, UM Evans responded, and Harvey filed a grievance dated June 19, 2019, complaining that Delbridge had "refused to log-in [ANY] of his informal complaints against [ANY] prison officials working in housing unit (7)," and stating that UM Evans was "allow[ing] Delbridge" to violate VDOC policy by letting him "refuse[] to log-in multiple … informal complaints." [Id. at 137]. On June 21, 2019, Phillips responded to the grievance and sought additional information. [Id. at 138]. On June 24, 2019, Harvey appealed. On July 1, 2019, Cosby upheld the intake decision. [Id. at 136]. Harvey could have provided Phillips with the additional information requested (which would have enabled Phillips to investigate the complaint), but Harvey chose instead to appeal the decision. The intake decision was upheld on appeal and Harvey took no further action to pursue this matter. Harvey therefore failed to exhaust the issues raised Claim 16. Accordingly, summary judgment will be granted with respect to Claim 16.

In Claim 17, Harvey alleges defendant Herrick, the Director of Health Services, stamped Informal Complaint Nos. GCC-19-INF-04260, -04516, and -04528 received on July 15, 2019,

---

[37] Informal Complaint Nos. GCC-19-INF-04132; Informal Complaint Nos. GCC-19-INF-04239; Informal Complaint Nos. GCC-19-INF-04242; Informal Complaint Nos. GCC-19-INF-04243; and Informal Complaint Nos. GCC-19-INF-04528. [Dkt. No. 10 at 25; 10-1 at 59, 60, 64, 66, 68].

but then rerouted the informal complaints to defendant Cosby, the Regional Ombudsman. Cosby stamped them received on July 18, 2019 and returned the informal complaints to Harvey because they had not been received within the five-day time limit. All three informal complaints were rejected at the intake stage. In appealing the intake decision, Harvey sought review by the Director of Health Services, defendant Herrick. He filed the appeal to the wrong administrator because an appeal of an intake decision is made to the Regional Ombudsman. See Wall, 2019 U.S. Dist. LEXIS 51159, *12 (appealing the "intake decision," does not exhaust the claim in the grievance if the inmate had "another available administrative remedy—refiling the deficient regular grievance."); see, supra at note 9, and page 37.[38] Harvey therefore failed to exhaust the issues raised Claim 17. Accordingly, summary judgment will be granted with respect to Claim 17.

In summary, Harvey failed to exhaust his administrative remedies with respect to Claims 1, 3, 4, 6, 7, 10, 12, 13, 14, 16, and 17. Therefore, summary judgment must enter in favor of defendants on those claims.

## IV. Remaining Claims

Defendants address the remaining claims (Claims 2, 8, and 9) in the motion to dismiss, arguing that Harvey has failed to state a claim for relief. With respect to Claim 2, Harvey alleges "inadequate exercise." In seeking to dismiss Claim 2, defendants Coleman, Bailey, and Holloway argue Harvey "has utterly failed to explain what he means by 'adequate' indoor and

---

[38] Harvey attached appeal letters for both grievances associated with Informal Complaint Nos. GCC-19-INF-04516 and GCC-19-INF-04528. In each case, he directed them to the Director of Health Services, and each appeal letter was dated July 5, 2019. [Dkt. No. 1-6 at 13, 20]. Harvey, however, clearly knew how to appeal an intake decision, and that the appeal of an intake decision went to the Regional Ombudsman — even if it involved an issue related to medical services such as dispensing medication — because Harvey did just that on June 10, 2019. See Dkt. No. 1-5 at 5-8 (grieving a response by Nurse Shaw regarding Nurse Baker's determination that an EG did not qualify as an emergency (alleged denial of pain medication), and Harvey's June 10, 2019 appeal letter was addressed to the Regional Ombudsman). In any event, VDOC OP 866.1 is clear, and the form expressly advises the inmate, that the repeal of an intake decision is made to the Regional Ombudsman. See, supra at note 28.

outdoor recreation" and that Harvey has not alleged "how much recreation time he received

during that time." [Dkt. No. 47 at 35]. Harvey has alleged that from April through July 2018 he

did not have adequate exercise/recreation and that the alleged deprivation of adequate exercise

caused him to experience health issues. Although how much exercise Harvey was permitted from

April through July 2018 is relevant, its relevancy is more appropriately a matter to be addressed

by summary judgment and not a motion to dismiss.[39] See Rivera v. Mathena, 795 F. App'x 169,

174 (4th Cir. 2019) ("two months without showers and recreation can be sufficient to support an

Eighth Amendment claim" (citation omitted). Accordingly, the motion to dismiss Claim 2 will

be denied.

Claim 8 alleges that Coleman and Green moved Harvey to a different housing unit on

May 17, 2019 in retaliation for his filing grievances against them, and that the move exposed

Harvey to a risk of physical and sexual attack. [Dkt. No. 10 at 18]. Although moving an inmate

in retaliation for the exercise of his First Amendment rights may violate the inmate's rights, "[i]n

the prison context, … such claims [are treated] with skepticism because 'every act of discipline

by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner

misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams v. Rice,

40 F.3d 72, 74(4th Cir. 1994)). To state a claim for retaliation in violation of the First

Amendment, a plaintiff "must allege that (1) [he or] she engaged in protected First Amendment

activity, (2) the defendants took some action that adversely affected [the plaintiff's] First

Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected

activity and the defendants' conduct." Constantine v. Rectors & Visitors of George Mason Univ.,

411 F.3d 474, 499 (4th Cir. 2005) (citing Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686

---

[39] In his sworn response, Harvey avers that he had no outdoor recreation from April 13, 2018 through July 6, 2018. [Dkt. No. 55 at 49].

(4th Cir. 2000)). Here, Harvey has alleged sufficient facts to establish those elements at the

motion to dismiss stage. Harvey has alleged that: (i) he filed a grievance; (ii) the officers against

whom he filed a grievance moved Harvey to a more dangerous unit; and (iii) the reason for the

move was retaliation. Harvey may not be able to provide any record evidence to support his

allegations at summary judgment, but such allegations are sufficient at the motion to dismiss

stage. Accordingly, the motion to dismiss Claim 8 must be denied.

Claim 9 alleges defendants Coleman and Green violated Harvey's Eighth Amendment

rights because they were deliberately indifferent to his serious medical needs and the conditions

of his confinement because when they moved Harvey's housing unit they did not notify the

medical department that he was being moved. Harvey alleges that this deliberate failure to

inform medication resulted in Harvey being without his HIV and hypertension medications for

four days. [Dkt. No. 10 at 18-19]. The Court has already addressed the issue of deliberate

indifference based upon the delay in Harvey receiving his medications in the prior Memorandum

Opinion dismissing the deliberate indifference claim against Nurse Bonner.

> [W]hile delay of, or interference with, medical treatment can amount to deliberate
> indifference, see Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018); Jett v.
> Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), there is no Eighth Amendment
> violation
>> unless "the delay results in some substantial harm to the patient,"
>> such as a "*marked*" exacerbation of the prisoner's medical
>> condition or "frequent complaints of severe pain." See Webb v.
>> Hamidullah, 281 F. App'x 159, 166-67 (4th Cir. 2008) (emphasis
>> added); see also Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732,
>> 734 (4th Cir. 2015) ("A delay in treatment may constitute
>> deliberate indifference if the delay exacerbated the injury or
>> unnecessarily prolonged an inmate's pain." (internal quotation
>> marks omitted)).

Dkt. No. 73 at 7-8.[40] The Court noted that minor delays in the delivery of medication do not constitute deliberate indifference. Id. at 9-10, 11. Here, Harvey has not alleged that the minor delay in his receipt of his medications resulted in any substantial harm.  Accordingly, Claim 9 will be dismissed.

****

In summary, three claims remain. Claims 2 alleges defendants Coleman, Bailey, and Holloway violated Harvey's Eighth Amendment rights (denied adequate recreation); Claim 5 is addressed in a pending motion to dismiss by defendants Spates, Mays, and Harris regarding the allegation that they exposed Harvey to danger on October 14, 2018; and Claim 8 alleges defendants Coleman and Green moved Harvey on May 17, 2019 in retaliation for his filing grievances against them. Consequently, there are no pending claims against defendants Hobbs, Woodbury, Barns (Barnes), Delbridge, Robinson (Kitchen Manager), Ray, Herrick, Cosby, Jones, and Warren and they will be dismissed as defendants herein. Further, Harvey did not list defendants Baker, Shaw, Pilgram, Phillips, Tapp, Captain Banes (Baines), Clay, and Armor Correctional Health Services in his amended complaint and each of them will be dismissed without prejudice.

## V. Conclusion

For the reasons outlined above, defendants' motion for summary judgement (Claims 1, 3, 4, 6, 7, 10, 12, 13, 14, 16, and 17) [Dkt. No. 46] will be granted, and the defendants' motion to dismiss [Dkt. No. 46] will be granted in part and denied in part.

---

[40] The similar deliberate indifference claim against Nurse Thigpen was also dismissed, in part, because the delay did not exacerbate Harvey's condition and there was no allegation of substantial harm. [Id. at 11-13].

An appropriate Order will issue separately.

Entered this _____ day of _____ March _____ 2022.

Alexandria, Virginia

_____
T. S. Ellis, III
United States District Judge

47