# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| **Tamar D. Harvey,** )<br>     **Plaintiff,**     )<br>                             )<br>**v.**                          )<br>                             )<br>**Sergeant Hobbs, et al.,** )<br>     **Defendants.**     ) | 1:20cv605 (TSE/TCB) |

## MEMORANDUM OPINION AND ORDER

Tamar D. Harvey ("Plaintiff" or "Harvey"), a Virginia prisoner proceeding pro se, filed a civil rights action under 42 U.S.C. § 1983 alleging twenty-five claims against thirty-one defendants. [Dkt. No. 1]. The complaint was screened, and Plaintiff filed an amended complaint on August 18, 2020, which alleged seventeen claims against nineteen defendants [Dkt. No. 10]. The Court has resolved all but three claims (Claims 2, 5, and 8) in prior Memorandum Opinions. [Dkt. Nos. 73, 88]. The matter is presently before the Court on Defendants Mays and Harris's motion to dismiss Claim 5, [Dkt. No. 81],[1] which alleges that defendants Spates, Mays, and Harris were deliberately indifferent to Plaintiff's conditions of confinement and his risk of being attacked on October 14, 2018 in violation of his Eighth Amendment rights. [Dkt. No. 10 at 15-16]. Plaintiff was advised of his right to respond in accordance with Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he filed a response in opposition. [Dkt.

---

[1] On November 16, 2020, the Office of the Attorney General declined to accept service on behalf of Defendant Spates because she no longer worked for the Virginia Department of Corrections ("VDOC") [Dkt. No. 24], and provided Spates last known address under seal. [Dkt. No. 29]. Subsequent attempts to serve Spates were unsuccessful. By Order dated June 1, 2022, defendant Spates was dismissed without prejudice pursuant to Rule 4(m) because she had not been served. [Dkt. No. 92].

No. 84]. Accordingly, this matter is now ripe for disposition.[2] For the reasons that follow, Claim 5 must be dismissed.

## I. Factual Background[3]

1. Plaintiff is a VDOC inmate and was transferred from the Augusta Correctional Center to the Greensville Correctional Center ("GRCC") on February 21, 2018. [Dkt. No. 10-1 at 3].

2. On April 11, 2018, Plaintiff was assaulted by his then cellmate, D. Jones, in Housing Unit 8, which is within GRCC's Section 3. [Dkt. Nos. 10 at 14-15; 1-1 at 1; 1-2 at 12-13; and 10-1 at 27]. Plaintiff was moved to Housing Unit 6 after the assault.[4]

3. Plaintiff was moved from Housing Unit 6 back to Housing Unit 8 on July 6, 2018. Defendants Mays and Harris worked in the GRCC Records Department at the time Plaintiff was moved to Housing Unit 8 on July 6, 2018, and knew that Plaintiff had been assaulted by multiple inmates while detained at the Augusta Correctional Center; that Plaintiff was a "vulnerable offender;" that "the risk of attack was pervasive in Section 3;" and that Plaintiff had been "previously assaulted" while he was housed in Section 3. [Dkt. No. 1-2 at 12-13].[5]

4. On October 14, 2018, Plaintiff was assaulted in his cell by inmate Coleman. [Dkt. No.

---

[2] The defendants alleged to have violated Plaintiff's rights in Claims 2 and 8 have not filed any further dispositive motions.

[3] The defendants seek to dismiss Claim 5 under the Rule 12(b)(6) standard, and the Court will consider plaintiff's well-pleaded allegations as true and the amended complaint will be viewed in the light most favorable to him. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

[4] Plaintiff's April 12, 2018 emergency grievance states that he was transferred to Housing Unit 6, Section 3. [Dkt. No. 1-1].

[5] It is unclear who made the decision to transfer Plaintiff back to Housing Unit 8. Plaintiff's allegations in Claim 5 indicate that Mays and Harris made the decision, but Plaintiff states that Lt. Ralph R. Coleman and Unit Manager Timothy W. Green "moved" him to Housing Unit 8 in retaliation for Plaintiff "filing grievances against them". [Dkt. No. 10-1 at 3]. The inconsistency, however, does not need to be resolved in order to rule on the present motion. For purposes of this motion, the Court will assume that Defendants Mays and Harris made the decision to move Plaintiff back to Housing Unit 8.

10 at 15].[6]

5. On October 14, 2018, defendant Spates was a correctional officer at GRCC [Id.] and opened Plaintiff's cell door (Housing Unit 8) and allowed an inmate named Coleman to enter the cell. [Id.; Dkt. No. 1-2 at 10]. Once inside, "Coleman displayed a knife and attempted to cut" Plaintiff. [Dkt. No. 10 at 15]. Spates did not call for backup and watched from the control booth.

6. After the assault, Spates opened the laundry room door in order to allow Coleman to hide his knife. [Dkt. No. 10 at 15].

7. Plaintiff filed an emergency grievance (No. 162937) on October 16, 2018, stating that Coleman had "punched" him in the nose, and that he had sought medical attention. [Dkt. No. 10-1 at 25].[7] Plaintiff was moved to a different housing unit after the assault. [Dkt. No. 1-2 at 12-13].

8. The April 11, 2018 assault on Plaintiff was committed by a different inmate, Plaintiff's prior cellmate D. Jones, as opposed to Coleman and occurred in in a different pod than the October 14, 2018 assault. [Id. at 14-15; Dkt. Nos. 1 at 15-16; 1-1 at 1; 10-1 at 27].

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted

---

[6] Plaintiff indicates the assaults by inmates Jones and Coleman occurred in different pods within Housing Unit 8, approximately six months apart. [Dkt. No. 1-15].

[7] To the extent the allegation in the amended complaint (displaying a knife and attempting to cut Plaintiff), and the exhibit (punched in the nose) conflict, the exhibit controls. See Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) (where a complaint's bare allegations conflict with an exhibit, the exhibit controls).

unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556); see also Fed. R. Civ. P. (8)(a)(2); Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility or 'entitlement to relief.''" Ashcroft, 556 U.S. at 678 (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Iqbal and Twombly articulated a new requirement ... rejecting a standard that would allow a complaint to 'survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish "some set of [undisclosed] facts" to support recovery.'" McCleary-Evans v. Md. Dep't of Trans., 780 F.3d 582, 587 (4th Cir. 2015). Finally, the Court should not accept "unwarranted deductions," "rootless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations." Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (citation omitted).

### III.

Plaintiff alleges that Defendants Mays and Harris were deliberately indifferent to this risk of harm to Plaintiff when Plaintiff was moved to Section 3, Housing Unit 8, at the GRCC on July 6, 2018. Generally, a failure to protect claim implicates a prisoner's Eighth Amendment right to be free from violence at the hands of other inmates, see Price v. Sasser, 65 F.3d 342, 345 (4th Cir. 1995), and that prison officials knew of and disregarded a *substantial risk of harm* that resulted in the inmate suffering an injury at the hands of another inmate. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (emphasis added). "The second element … requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a 'sufficiently culpable state of mind.' In this context, the required state of mind that must be established is a 'deliberate indifference to inmate health or safety.'" Id. (citations omitted)." Danser v.

4

Stansberry, 772 F.3d 340, 346-47 (4th Cir.2014) (footnote omitted) (quoting Farmer, 511 U.S. at 834 (citation and internal quotation marks omitted)).

Nevertheless, "not every assault suffered by an inmate at the hands of another inmate rises to the level of a constitutional violation." Blankenship v. Virginia, 432 F. Supp. 2d 607, 611 (E.D. Va. 2006) (citing Westmoreland v. Brown, 883 F. Supp. 67, 74 (E.D. Va.1995)) ("Any time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of his fellow inmates ....").

The Supreme Court, in Farmer, explained that to be deliberately indifferent, a prison official must be more than merely negligent. 511 U.S. at 835. Instead, an official can only be held liable for an Eighth Amendment violation if the official knows of and disregards an excessive risk of harm to the safety or health of the inmate. In other words, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "[A]n official's failure to alleviate a *significant risk* that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment." Id. at 838 (emphasis added). As such, deliberate indifference is "a very high standard." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

For purposes of this motion, the Court will assume the punch in the nose Plaintiff suffered on October 14, 2018 was a serious or significant physical injury. See Brown v. Budz, 398 F.3d 904, 910-11 (7th Cir. 2005) (recognizing that "a beating suffered at the hands of a fellow detainee ... clearly constitutes serious harm, as '[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society'") (quoting Farmer, 511 U.S. at 834).

5

Plaintiff alleges: (i) that the defendants knew that he had been assaulted by multiple inmates while detained at the Augusta Correctional Center; (ii) that Plaintiff was a "vulnerable offender;"[8] (iii) that "the risk of attack was pervasive in Section 3;" and (iv) that Plaintiff had been "previously assaulted" while he was housed in Section 3.[9] [Dkt. No. 1-2 at 12-13]. The question in this case is whether the risk of the injury Plaintiff suffered in Housing Unit 8 at GRCC on October 14, 2018 was a "significant" or "substantial" risk that the defendants should have perceived.

The Seventh Circuit has observed that a sufficient allegation of "substantial risk of harm" in a failure-to-protect case generally involves "risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault' to the plaintiff." Brown, 398 F.3d at 911. In other words, "substantial risk" means "risks so great that they are almost certain to materialize if nothing is done." Id. (quoting Delgado v. Stegall, 367

---

[8] Plaintiff's basis for deeming himself a "vulnerable offender" are four VDOC Prison Rape Elimination Act (PREA") "Psychology Associate Follow-up" forms. [Dkt. No. 11 at 5-8]. One form is dated prior to the October 14, 2018 assault by inmate Coleman, and the other three are dated after. The form dated November 13, 2017 was completed while Plaintiff was at the Augusta Correctional Center, and there is a check in the box indicating his evaluation was an "Incident/Special referral" and that Plaintiff was designated a "High Risk Sexual Victim." [Id. at 7]. The other three forms are similar, but all three are dated January 31, 2020 or later. Plaintiff has also attached an exhibit that indicates Housing Unit 6 is designed for several inmate populations, which include inmates that are "vulnerable to predation." [Dkt. No. 10-1 at 23]. Plaintiff also alleges that prisoners in Housing Unit 8 knew that he was "gay and effeminate," and that those "facts" made him "vulnerable to assaults" in Housing Unit 8. [Dkt. No. 10 at 15-16]. For purposes of this motion, the Court assumes the defendants were aware that he was considered a vulnerable inmate. However, Plaintiff does not allege that the defendants had read or had any knowledge of the November 13, 2017 form, or its contents, prior to Plaintiff being moved back to Housing Unit 8 on July 6, 2018. Indeed, Plaintiff's exhibits indicate that the four forms are part of his mental health records [Dkt. No. 11 at 2-4], and therefore only mental health personnel would normally have had access to the forms. Defendants Mays and Harris were records administrators and not mental health workers.

[9] Plaintiff alleged in his original complaint that Housing Unit 8 "housed known gang members" [Dkt. No. 1-1 at 1], and in his amended complaint Plaintiff alleged that Housing Unit 8 was known as "gangland" within Claim 4, which was dismissed on March 29, 2022. [Dkt. No. 88 at 38]. Claim 4 alleged the July 6, 2018 move was an act of retaliation by defendants Coleman and Green. [Dkt. No. 10 at 15.]

F.3d 668, 672 (7th Cir. 2004), abrogated on other grounds by Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 259, (2009)).

Plaintiff's amended complaint does not allege that the defendants knew or had reason to know that inmate Coleman posed a "substantial risk" of harm to Plaintiff prior to the October 14, 2018 assault. There is no allegation that there was any animosity between Plaintiff and Coleman; that Coleman was dangerous or had a history of fighting with or assaulting other inmates; or that Coleman had threatened Plaintiff. In the present case, there is no allegation that the defendants had any knowledge that Coleman posed a risk to plaintiff or anyone else at GRCC, much less a "substantial risk of harm."

Plaintiff implicitly acknowledges the inadequacy of his claim by alleging that there was a "pervasive risk" that he would be assaulted because he had been previously assaulted at the Augusta Correctional Center; that he was a "vulnerable offender;" that he "had been "previously assaulted" while he was housed in Section 3 by another inmate; and that Mays and Harris knew this and had him moved back to Housing Unit 8 in Section 3. Plaintiff's allegations are insufficient to support his assertion that Housing Unit 8 in Section 3 presented a "pervasive risk" of assault.

The Fourth Circuit instructs that "[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution." Withers v. Levine, 615 F.2d 158, 161 (4th Cir. 1980); Wilson v. Ryker, 451 F. App'x 588, 589 (7th Cir. 2011) ("A substantial risk of serious harm is one in which the risk is 'so great' that it is 'almost certain to materialize if nothing is done'…. 'the conditions presenting the risk must be "sure or very likely to cause ... needless suffering,' and give rise to 'sufficiently imminent dangers.'") (citations omitted); Falls

7

v. Nesbitt, 966 F.2d 375, 378 (8th Cir. 1992) ("A 'pervasive risk of harm' requires evidence of *frequent* violence or sexual assaults which places a prisoner or group of prisoners in reasonable fear for their safety; and prisoners must apprise the prison officials of the existence of the problem and the need for protective measures. In every case, a 'pervasive risk' is something more than a single incident and something less than a riot."). "In order to establish an Eighth Amendment violation, plaintiffs must establish that risk of inmate-inmate violence is a 'serious problem of substantial dimensions,' although violence need not be 'rampant.'" Withers, 615 F.2d at 161.

A failure-to-protect claim requires allegations of facts "from which a court could conclude that [an inmate] face[d] a substantial risk of serious harm, and that the defendants knew of and disregarded that risk" and a conclusory allegation of "a generalized risk of violence is not enough" because "prisons are inherently dangerous places." Wilson, 451 F. App'x at 589 (citations omitted); see also Day v. Fed. Bureau of Prisons, 233 F. App'x 132, 134 (3d Cir. 2007) (holding that an inmate's conclusory allegations of being in "grave danger" were insufficient to demonstrate a "pervasive risk of harm"); cf. Timpson v. Anderson Cty. Disabilities & Special Needs Bd., 31 F.4th 238, 257-257-58 (4th Cir. 2022) (in the context of a claim of supervisory liability, to establish a supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, the plaintiff must show "that the conduct is widespread, or at least has been used on several different occasions…. [which is] a heavy burden … [that] ordinarily, he cannot satisfy … by pointing to a single incident or isolated incidents") (citations omitted).[10]

---

[10] The Fourth Circuit has observed that "it is virtually impossible to eliminate violence among the incarcerated, as we have frequently noted." Taylor v. Freeman, 34 F.3d 266, 273 n.6 (4th Cir. 1994) (citing Shrader v. White, 761 F.2d 975, 980 (4th Cir. 1985)).

Here, approximately six months before he was assaulted by inmate Coleman on October 14, 2018, Plaintiff alleges that he was assaulted by a different inmate on April 11, 2018 while housed in a different pod within Housing Unit 8. Plaintiff was in Housing Unit 8 for over four months before he was assaulted by inmate Coleman, but there is no allegation that there was any history or animosity between Plaintiff and inmate Coleman or any other inmate in the unit. Plaintiff's allegations that the defendants knew he had been previously assaulted at a different prison and that he is a vulnerable offender, do not establish the existence of a pervasive or substantial risk of harm. Plaintiff's allegations establish only that he was the victim of two isolated, unrelated, attacks while at GRCC by two different inmates approximately six months apart. The allegations do not establish the existence of "pervasive risk of harm" standard of set out in Withers. The defendants' motion to dismiss Claim 5 will be granted.

Accordingly, it is hereby

ORDERED that defendants Mays' and Harris' Motion to Dismiss [Dkt. No. 81] be and is GRANTED; and it is further

ORDERED that counsel for the defendants listed in Claims 2 and 8 are directed to either file a motion for summary judgment or other dispositive motion within thirty (30) days of the date of this Order or expressly decline to do so.

Since Claims 2 and 8 are still pending before the Court, this ruling is interlocutory, and plaintiff must wait for a final order to be entered before he can appeal this Order.

The Clerk is directed to send a copy of this Order dismissing Claim 5 to Plaintiff and to all counsel of record for the defendants.

Entered this 18th day of July 2022.

Alexandria, Virginia

The Honorable T.S. Ellis, III
Senior United States District Judge