IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| **Tamar D. Harvey,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | 1:20cv605 (TSE/WEF) |
| ) | |
| **Sergeant Hobbs, et al.,** ) | |
|     **Defendants.** ) | |

### MEMORANDUM OPINION and ORDER

This matter is before the Court on the Plaintiff's several motions to compel discovery [Dkt. Nos. 135, 139, 144], his motion for production of documents [Dkt. No. 146], and the defendants' opposition thereto. [Dkt. No. 142]. In context, the discovery issue between the parties has arisen in the posture of cross-motions for summary judgment. [Dkt. Nos. 104, 111]. The Court has resolved all but two claims (Claims 2 and 8) in prior Memorandum Opinions. [Dkt. Nos. 73, 88, 93].

> Claim 2: Defendants Coleman, Bailey, and Holloway violated Harvey's Eighth Amendment rights because they were deliberately indifferent to his serious medical needs and the conditions of his confinement from April 3, 2018 through July 6, 2018, depriving him of adequate indoor and outdoor recreation time, which caused him hemorrhoids, anal dryness, and other health issues. [Dkt. No. 10 at 13].
>
> Claim 8: Defendants Coleman and Green violated Harvey's First Amendment rights by retaliating against him by moving him to "Section 3" on May 17, 2019, where "[his] risk of physical/sexual attack was very pervasive," because he had filed grievances and a lawsuit against both related to Harvey's TV. [Id. at 18].

### I. Motion to Compel, Dkt. No. 135

Harvey's motion to compel [Dkt. No. 135] seeks "discovery" and answers to interrogatories that concern aspects of his diet (involving chicken parts in his food); food operating procedures; menu lists; all ingredients, preservatives, by-products, fillers, additives and chemical added to food served at Greensville [Id. at 2-3, 5, 7] (citing Dkt.

Nos. 43, 120, 121); and an April 11, 2018 email from Lt. Pair that the defendants have not been able to find. [Id. at 3]. He also seeks his "medical records," the identity of a person who claimed Harvey exhibited predatory behavior towards them, [Id. at 4], and inmate Monroe's housing history. [Id. at 9]. Harvey's motion does not explain how any of the matters are relevant, much less material, to the defendants' pending motion for summary judgment, which is the current posture of this case.

The material relevant issues with respect to Claim 2 with regard to the cross-motions for summary judgment are causation with regard to the extent of the alleged deprivation of recreation and the alleged serious medical condition, as well as the fact that the defendants are not medical personnel. See Vannoy v. FRB of Richmond, 827 F.3d 296, 300 (4th Cir. ) ("A fact is material if it might affect the outcome of the suit under the governing law.") (citation omitted). The motion to compel (which overwhelming concerns the make-up of the chicken served to the inmates) is irrelevant to those issues. Likewise, the material relevant points for Claim 8 are who decided to move Harvey from the SAM Unit to Section 3, and when the decision was made. The additional discovery sought by Harvey is not relevant or material to the cross-motions for summary judgment, and his motion to compel [Dkt. No. 135] will be denied.

## II. Motion for Production of PREA Documents, Dkt. No. 146

Plaintiff's motion for production of documents seeks documents related to an alleged Prison Rape Elimination Act ("PREA") complaint against another inmate. [Dkt. No. 146 at 9]. The documents sought (complaint form, voice recording of complaint, investigative report) [Id. at 1], have no relevance to either Claim 2 or Claim 8 and the motion will be denied.

## III. Motion to Compel, Dkt. Nos. 139, 144 ("Second Motion to Compel")

The Second Motion to Compel is more narrowly focused on Claims 2 and 8, and

references a pleading Harvey filed on January 3, 2023, "Amended Interrogatories," which listed the following 21 interrogatories:

- No. 2, addressed to Defendants Coleman, Bailey and Holloway: Why did you all [adjust] my claim against you at claim 2? Stating that I alleged that your actions [caused] my injuries rather than [exacerbated] my injuries. See: Document 112, Page 1, Page ID# 2191 and ORDER at (Dkt. No. 5), Page ID# 268.

- No. 3, addressed to Defendants Coleman, Bailey and Holloway: What is the proper VDOC procedure for investigating an offender s grievances regarding alleged medical injuries and alleged physical injuries?

- No. 4, addressed to Defendants Coleman, Bailey and Holloway: Was my VDOC offender medical record file [available] to you all for access at [GCC]-Greensville Correctional Center, to properly investigate my grievances (any and all grievances) from 2018-2020?

- No. 6, addressed to Coleman and Green: Is it true that- "the VDOC Operating Procedure 425.4., Management of Bed and Cell Assignments-allows institutional staff to make individualized determinations about inmate bed assignments"?

- No. 7, addressed to Green: Do you now agree that the Greensville Correctional Center, has [protective custody]? Ang, why did you previously issue me your false response statement to my informal complaint GCC-19-INF-03759, on 5/23/19, stating that: "There is no protective custody ay GCC"?

- No. 8, addressed to Coleman, Bailey and Holloway: Is it true that "the VDOC Operating Procedure 841.6., Recreating Programs states- both outdoor and covered/enclosed exercise areas for general population offenders are provided in sufficient number to ensure that each offender is [offered] at least one hour of access daily"?

- No. 11, addressed to Holloway; Is it true that before you issued your Level II responses to [any] of my grievances at Greensville-"once my grievances were submitted, [all] records necessary to address the complaint should be made available to the designated person conducting the investigation ?

- No. 12, addressed to Bailey: Is it true that before you issued your Level I responses to [any] of my grievances [all] records necessary to address the complaint should be made available to the designated person conducting the investigation?

- No. 13, addressed to Coleman, Bailey and Holloway: Did the SAM Program Pod, have the same access to outside the cell and outside of the housing unit recreation times, as the general population at Greensville from 2018 through 2020?

- No. 14, addressed to Bailey, (Warden of Greensville): Is it true that–as the Warden of the Greensville Correctional Center, you oversaw the entire compound and you had

3

the sole power to allow for outside exercise time for me from April through July of 2018?

- No. 15, addressed to Bailey: Is it true that as the Greensville Warden in 2018, the person who 'scheduled the recreation times' was your subordinate and you could at any time change the [alleged] schedule?

Plaintiff further notes that no such "recreation scheduled" was ever produced to the court or to himself.

- No. 16, addressed to Bailey: Is it true as the Warden of ("GCC") it is your primary responsibility to [ensure] that an appropriate investigation occurred for my grievances regarding my claim #2?

- No. 17, addressed to Bailey: Is it true as the ("GCC") Warden in 2018 you had access to each and every VDOC document(s), records and files, including all offenders' medical files?

- No. 18, addressed to Coleman: At Page ID# 2201 at 31., and Coleman Affidavit at 12., you stated that "you did not make housing assignments for inmates at GCC," so Why did you personally place me in a cell on both April 11 and October 15 of 2018, after I had been physically assaulted by both prisoners' Jones and Coleman and moved to housing unit 6, 300 pod/ the SAM program pod?

- No. 19, addressed to Coleman: On April 11 and October 15 of 2018, Why didn't the 'record officials' make the decision about a cell for me [before] 1 was moved to the SAM pod/ HU6, 300 pod? And, Why did you have to personally assign me a cell number once 1 entered HU6?

- No. 20, addressed to Green: Name and identify (any and all) other staff members that also conducted that alleged Institutional Classification Authority Hearing ("ICA") to review Harvey's assignment to the SAM Unit at GCC on April 15, 2019.

- No. 21, addressed to Green: Other than you, what other staff members (name and title) recommended that Harvey be removed from the SAM Unit on April 15, 2019?

- No. 22, addressed to Green: During your alleged, April 15, 2019, review of Harvey's assignment to the SAM Unit at GCC, who on the GCC staff assigned Harvey to the SAM pod and why (including said dates) did they assign him to that program pod?

- No. 23, addressed to Green: On April 15, 2019, before you held that ("ICA") hearing. Why didn't you issue Harvey a notice and offer to also attend that alleged hearing per VDOC policy?

Here, Plaintiff affirms the Virginia Department of Corrections Operating Procedure 830.1., Institution Classification Management. (Found at Plaintiff's Enclosure B for summary judgment).

- No. 24, addressed to Green: Following said ("ICA") hearing on April 15, 2019, Why didn't you issue Harvey a paper copy of the final results of your alleged hearing, per VDOC policy?

Here, Plaintiff again affirms VDOC OP 830.1.

4

- No. 25, addressed to Coleman and Green: On May 17. 2019, both of you removed me from HU6/ 300 pod (also known as) the SAM pod, name the person already assigned to HU7, 100 pod, cell #101 [before] I was re-assigned to that cell.

[Dkt. No. 144 at 3-6].[1]

In their reply, the defendants asserted that Harvey had not consulted in good faith (supported by counsel's reply letter dated February 2, 2023), that they have answered Harvey's previous interrogatories, that Harvey's amendment of his interrogatories is improper, and it is unclear what Harvey attempted to do. [Dkt. Nos. 142, 142-1]. Harvey has not responded to the defendants' reply, but instead filed repetitive motions to compel.

Litigants have an obligation to cooperate with respect to planning and executing discovery or resolving discovery disputes. See Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 357-58 (D. Md. 2008). An "entire dispute [may be] avoided [if] counsel cooperate[] in the conduct of discovery, as they are obligated to do." Kemp v. Harris, 263 F.R.D. 293, 297 (D. Md. 2009). Here, Plaintiff's attempt at resolution is virtually nonexistent. On February 2, 2023, counsel for defendants sent a letter to Plaintiff stating it was unclear what Plaintiff was attempting to accomplish with his "Amended Interrogatories," Dkt. No. 131, because interrogatories are not amended and the interrogatories contained in Dkt. No. 131 (numbered 1 through 25) were "completely different from the interrogatories you propounded previously." [Dkt. No. 142-1]. The confusion referred to regarding Dkt. No. 131 is due to Harvey's previous interrogatories, numbered 1 through 15 [Dkt. No. 43], and yet another set of interrogatories, numbered 16 through 25. [Dkt. No. 62].[2]

---

[1] The interrogatories were part of what Harvey filed on January 3, 2023. [Dkt. No. 131].

[2] Harvey sent a "Meet and confer letter dated August 13, 2021," which in essence states he has not received answers to interrogatories 16 through 25, and that he filed the letter before he sought the assistance of the Court. [Dkt. No. 72]. Twelve days later, Harvey sent a motion to compel to the Court alleging bad faith and that defendants counsel had not responded to his meet and confer letter, and instead had filed a motion to stay discovery. [Dkt. No. 75]. The motion to stay was filed on July 21, 2021, and referenced a pending motion for summary judgment based upon

5

"The duty to confer generally requires counsel to converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so.... The cooperation process should involve information sharing and dialogue in an attempt to resolve discovery disputes without the necessity of the Court ruling on each issue in dispute." DeWitt v. Southwestern Bell Tel. Co., Case No. 12-2605-SAC, 2014 U.S. Dist. LEXIS 22760, at *4 (D. Kan. Feb. 24, 2014). As observed in DeWitt, '[t]he Federal Rules of Civil Procedure provide necessary boundaries and requirements for formal discovery [and that] [p]arties must comply with such requirements in order to resort to the provisions of Fed. R. Civ. P. 37, governing motions to compel." Id. at *4. Here, the record establishes that defendants' counsel has not acted in bad faith and has requested clarification of the interrogatories that are arguably unclear, and that the defendants were awaiting a ruling on a dispositive motion before answering discovery. Harvey's position, as reflected by the record, is that "good faith" consists of sending a pro forma letter and, thereafter, not attempt to resolve the dispute but to simply file a motion to compel.[3] Consequently, the motion to compel will be denied.

Denying the motion to compel, however, will not move this litigation forward. In Shaw v. Foreman, 59 F.4th 121 (4th Cir 2023), the Fourth Circuit held that where a "district court [is] on fair notice of potential disputes as to the sufficiency of the summary judgment record," id. at

---

Harvey's failure to exhaust. [Dkt. Nos. 46, 47]. Harvey has filed several responses to the motion for summary judgment. Defendants' counsel sent Harvey a letter on August 18, 2021, stating her reasonable position regarding the outstanding discovery, which was the pending motion for summary judgment. [Dkt. No. 77 at 7]. Harvey's response was to file yet another motion to compel. [Dkt. No. 77]. On March 4, 2022, the Court denied the motions to compel without prejudice, noting that "[a] request for discovery... is properly denied where the evidence sought for discovery would not create a genuine issue of material fact sufficient to defeat summary judgment." Dkt. No. 86 at 2-3 (citing Ingle ex rel. Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006)). The same order noted the different posture between the majority of Harvey's claims, that present Claims 2 and 8 were the subject of a motion to dismiss, and that Harvey could not "use the discovery process to obtain [the] facts [necessary to state a claim] after filing suit." Dkt. No. 86 at 5.

[3] See Nester v. Poston, 200 F.R.D. 268, 270 (W.D. N.C. 2001) ("A litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party.") (citing See Fed. R. Civ. P. 26(c).

129, the Court should act to ensure the adequacy of the summary judgment record. The Court has reviewed the Plaintiff's interrogatories and has determined that many of the interrogatories have either been answered by the affidavits filed in support of the defendants' motion for summary judgment or are irrelevant to the material facts regarding Claims 2 and 8 within the context of the defendants' motion for summary judgment.[4] Those interrogatories answered by the current record or are irrelevant are as follows:

> Interrogatory No. 2 (answered by Dkt. No. 10 at 13, no allegation in Claim that the Plaintiff's serious medical condition was "exacerbated").
>
> Interrogatory No. 3 (answered by defendants' affidavits in support of the motion for summary judgment, Dkt. Nos. 112-3, 112-4, and 127).
>
> Interrogatory No. 4 (overbroad, covers a time period outside of that alleged in Claim 2 and also answered by defendants' affidavits in support of the motion for summary judgment, Dkt. Nos. 112-3, 112-4, and 127. Further, Plaintiff has admitted in his filings that he has his medical record, and much of it has been filed as an exhibit, Dkt. No. 10-1 at 57; Dkt. No. 50, 50-1; Dkt. No. 55-1; Dkt. No. 106; Dkt. No. 137, 137-1; and the defendants' affidavits, Dkt. Nos. 112-3, 112-4, and 127).
>
> Interrogatory No. 6 (defendants have already stated they did not make the housing assignment, Dkt. Nos. 112-1 and 127).
>
> Interrogatory No. 7: (irrelevant to either Claims 2 or 8).[5]

---

[4] The purpose of interrogatories is to discover the facts of a case or learn where such facts are available, and to narrow the issues of fact. United States v. Procter & Gamble Co., 25 F.R.D. 252, 253 (D.N.J. 1960). In Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1506 (11th Cir. 1985), the Eleventh Circuit held that "the district court did not abuse its discretion in curtailing discovery" where "the most that c[ould] be obtained through" the plaintiff's interrogatories was "cumulative evidence."

> When the record becomes clear enough to disclose that further discovery is not needed to develop significant aspects of the case and that such discovery is not likely to produce a genuine issue of material fact, discovery should be ended. Universal Brands, Inc. v. Philip Morris, Inc., 546 F.2d 30, 36 (5th Cir.1977); Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1145 (5th Cir.1973).

Amey, 758 F.2d at 1506 (quoting Aviation Specialties, Inc. v. United Technologies Corp., 568 F.2d 1186, 1190 (5th Cir.1978). See also Fed. R. Civ. P. 26(b)(2)(C)(i) ( a court may "on its own ... must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that ... the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

[5] Rule 26(b)(1) requires that information sought in discovery be relevant to the plaintiff's claim. See Vica Coal Co. v. Crosby, 212 F.R.D. 498, 504 (S.D. W. Va. 2003) ("Court may limit discovery to the extent that discovery requests do not meet the relevancy standard or are unreasonably cumulative, duplicative, burdensome or expensive.").

> Interrogatory No. 8: (improper; the VDOC regulation exists independent of any defendants answer and Plaintiff has used the VDOC regulation in his pleadings).[6]
>
> Interrogatory No. 11 (overbroad, no relevance to either Claims 2 or 8).
>
> Interrogatory No. 12 (repetitive; answered by defendants' affidavits in support of the motion for summary judgment, Dkt. Nos. 112-3, 112-4, and 127).
>
> Interrogatory No. 17 (answered by defendant's affidavit in support of the motion for summary judgment, Dkt. No. 112-3).
>
> Interrogatory No. 18 (no relevance to either Claims 2 or 8).
>
> Interrogatory No. 19 (no relevance to either Claims 2 or 8).
>
> Interrogatory No. 25 (no relevance to either Claims 2 or 8).

The defendants shall respond to the remaining nine interrogatories, to include any objections to them, and within twenty-one days serve the answers on the Plaintiff, as well as file a copy with the Court. If there are no objections to the nine interrogatories, Plaintiff will have fourteen days after he receives the defendants' answer to file a pleading supplementing his memorandum in support of his motion for summary judgment or his opposition to the defendants' motion for summary judgment. If there are objections, the Court will rule on the objections, and the Plaintiff will then be allowed to file a supplemental pleading in accordance with further order of the Court.

Accordingly, it is hereby

ORDERED that the Plaintiff's motion to compel [Dkt. No. 135] is DENIED; and it is further

ORDERED that the Plaintiff's motion for production of PREA documents [Dkt. No. 146] is DENIED; and it is further

ORDERED that the Plaintiff's motions to compel [Dkt. Nos. 139, 144] are DENIED; and it is further

---

[6] See Heartland Surgical Specialty Hosp., LLC v. Midwest, 2007 U.S. Dist. LEXIS 54358, *29 (D. Kan. 2007) (ruling that interrogatories seeking each and every fact and which blanket the entire case are improper).

ORDERED that the defendants respond to the nine interrogatories identified herein within twenty-one (days) of the date of this Order; and it is further

ORDERED that, if there are no objections to the nine interrogatories, Plaintiff shall have twenty-one (days) after he receives the defendants answer to file a supplemental pleading.

The Clerk is directed to send a copy of this Order to Plaintiff, and a copy of this Order to counsel of record for defendants.

Entered this ___13th___ day of ___July___ 2023.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge

9